T.C. Memo. 1997-410


UNITED STATES TAX COURT


HUGH WILKINSON AND EVELYN WILKINSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1963-96.                    Filed September 16, 1997.


        H and W (Ps) filed their 1988, 1989, and 1990
Federal income tax returns on Nov. 6, 1992, reporting
large amounts of taxable income.  H claimed that he
failed to file timely returns because he had emotional
problems.  W claimed that she was not required to file
returns because she earned no income.  On their 1988
Federal income tax return, Ps reported that they had a
$1,105 short-term capital loss that could be carried
over from 1988 to 1989.  On their 1989 return, they
reported and deducted the carryover as $1,208.  R
mailed a notice of deficiency to Ps on Nov. 3, 1995.
        <u>Held</u>:  The period of limitations for assessment of
tax did not expire before R issued the notice of
deficiency.
        <u>Held</u>, <u>further</u>, Ps are liable for the deficiency
determined by R for 1989.
        <u>Held</u>, <u>further</u>, Ps are not liable for an addition
to tax for fraud under sec. 6653(b)(1), I.R.C., for
1988 or an addition to tax for fraudulent failure to
file under sec. 6651(f), I.R.C., for 1989.

*Held*, *further*, Ps are liable for an addition to tax for failure to file timely returns under sec. 6651(a)(1), I.R.C., for 1988 and 1989.

*Held*, *further*, Ps are liable for an addition to tax for failure to pay estimated taxes under sec. 6654, I.R.C., for 1988 and 1989.

*Held*, *further*, W does not qualify for innocent spouse relief under sec. 6013(e), I.R.C.

Ismael Gonzalez, for petitioner Hugh Wilkinson.

Melvin Duke, for petitioner Evelyn Wilkinson.

Theresa G. McQueeney, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  Hugh Wilkinson (Dr. Wilkinson) and Evelyn Wilkinson (Mrs. Wilkinson) petitioned the Court to redetermine respondent's determination with respect to their 1988 through 1990 taxable years.  Respondent determined and reflected in a notice of deficiency dated November 3, 1995, the following deficiency, additions to tax, and penalties:

| Year | Deficiency | Additions to Tax | | | Penalties |
| | | Sec. 6651(f) | Sec. 6653(b)(1) | Sec. 6661 | Sec. 6662 |
| --- | --- | --- | --- | --- | --- |
| 1988 | --- | --- | $97,845 | $32,615 | --- |
| 1989 | $29 | $105,978 | --- | --- | $29,856 |
| 1990 | --- | 135,597 | --- | --- | 36,183 |

Respondent also determined in the alternative that petitioners are liable for additions to their 1988 through 1990 taxes under sections 6651(a)(1) and 6654.

Respondent conceded in the answer that petitioners are not liable for the addition to tax under section 6661 or the penalties under section 6662. Following this concession, and a ruling by the Court as to 1990, the only issues left to decide are:

1. Whether the period of limitations for assessment of tax for 1988 and 1989 expired before respondent issued the notice of deficiency to petitioners. We hold it did not.

2. Whether petitioners are liable for the deficiency determined by respondent in petitioners' 1989 income tax due to unreported income. We hold they are.

3. Whether petitioners are liable for the addition to tax for fraud under section 6653(b)(1) for 1988 and the addition to tax for fraudulent failure to file under section 6651(f) for 1989. We hold they are not.

4. Whether petitioners are liable for additions to tax for failing to timely file their 1988 and 1989 returns under section 6651(a). We hold they are.

5. Whether petitioners are liable for additions to tax for failing to pay estimated taxes under section 6654 for 1988 and 1989. We hold they are.

6.   Whether Mrs. Wilkinson is an "innocent spouse" under section 6013(e) for either of the years in issue.  We hold she is not.

Unless otherwise indicated, section references are to the Internal Revenue Code applicable to the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations and exhibits submitted therewith are incorporated herein by this reference.  Petitioners resided in Westbury, New York, when they petitioned the Court.

1.  Personal Background

Dr. Wilkinson graduated cum laude from Howard University in 1969 and received his medical degree from Howard University Medical School in 1973.  He became board certified as an obstetrician/gynecologist in 1981.  During the years in issue, Dr. Wilkinson held three employment positions where he maintained professional relationships with his colleagues and approximately 3,500 patients.  Primarily, he was a full-time, self-employed physician specializing in obstetrics and gynecology with a medical practice located in Brooklyn, New York.  Additionally, he worked part time for New York City Health & Hospitals at Kings County Abortion Unit.  He also worked part time as an associate director for Wykoff Heights.

Mrs. Wilkinson received a bachelor of science degree in nursing from City College and became a registered nurse in 1986. Since that time, she has been employed sporadically. In 1987, she worked for 3 months as a registered nurse. In 1991, she worked 2 days a week at Dr. Wilkinson's medical practice as a registered nurse. She knew that Dr. Wilkinson was working and making money during this time and did not believe that he hid money from her. During the years in issue, she used Dr. Wilkinson's income to buy things that benefited her and the family, as well as to vacation in Florida.

In September 1988, Dr. Wilkinson had gall bladder surgery. He did not resume working until January 1989. Other than the gall bladder surgery, Dr. Wilkinson did not have any other serious physical illnesses during the years in issue.

Dr. Wilkinson did not undergo psychiatric evaluation during the years in issue. He saw Dr. Coleman, a psychiatrist, approximately 5 years after the last year in issue, for symptoms of depression. Dr. Coleman treated Dr. Wilkinson from June 1995 through February 1996, approximately three times a month. Dr. Coleman opined that Dr. Wilkinson suffered during the relevant years from a personality disorder known as "double depression", and that a symptom of this disorder is a neglect of responsibility such as failing to file tax returns.

2. Preparation of Federal Income Tax Returns

Petitioners retained an accounting firm named Thompson & Co. to perform accounting work for 1987 and 1988, and petitioners provided Thompson & Co. with all necessary information to prepare petitioners' 1987 and 1988 Federal income tax returns. On August 15, 1988, Thompson & Co. prepared a 1987 Federal income tax return for petitioners listing $187,231 as their adjusted gross income. Petitioners refused to file this return, believing it to be incorrect because it understated their income. Later, Thompson & Co., prepared a 1988 return for petitioners listing their income at $217,231. Petitioners refused to file this return, again believing the reported income was understated. Thompson & Co. calculated petitioners' 1988 tax at $8,997 per quarter and advised them to pay estimated taxes of $35,988. During the summer of 1989, petitioners dismissed Thompson & Co., claiming that the firm underreported petitioners' income. In or about June 1989, petitioners hired another accounting firm named Frumkin & Lukin to provide accounting services to Dr. Wilkinson's medical practice and to prepare petitioners' Federal income tax returns for the years in issue.

Petitioners filed their 1988 and 1989 Federal income tax returns, prepared by Frumkin & Lukin, on November 6, 1992. Petitioners reported that Dr. Wilkinson's medical practice realized gross income of $708,220 during 1988 and $792,444 during 1989, and that after subtracting payments of withholding and estimated tax, petitioners owed taxes in the amounts of $133,437

for 1988 and $150,058 for 1989. On petitioners' 1988 Federal income tax return, they reported a $1,105 short-term capital loss to be carried over to 1989, $5,000 of estimated tax payments, and $11 of tax withheld. On their 1989 Federal income tax return, petitioners deducted a $1,208 short-term capital loss carryover from 1988[1] and reported $8,000 of estimated tax payments and $3 of tax withheld. Both petitioners signed the returns. Mrs. Wilkinson claims that she did not read the returns before signing them but concedes that she could have read the returns before she signed them.

Petitioners have a history of filing delinquent tax returns and paying late any tax that is due with respect thereto. Petitioners filed their 1985 return in December 1986 and paid the balance of the tax in April 1987. Petitioners filed their 1986 return in July 1988, paying the balance of the tax due in January 1989. Petitioners filed their 1987 return in July 1990, paying the balance of the tax due in April 1991.

## 3. Dr. Wilkinson's Criminal Plea

On or about March 31, 1995, a "Misdemeanor Information" was filed against Dr. Wilkinson, charging him with violating section 7203 by willfully failing to file timely Federal income tax returns for 1988 through 1990. On November 1, 1995, Dr. Wilkinson pled guilty to violating section 7203 for 1988.

---

[1] This discrepancy accounts for the $29 deficiency in the 1989 tax year.

The other two counts were dismissed.  Dr. Wilkinson was sentenced to 5 years of probation and 4 months of electronic home detention, and he was fined $10,000.

## OPINION

### A.  Period of Limitations

Petitioners allege in their petition that respondent is time barred from assessing or collecting a deficiency, or an addition thereto, for 1988 or 1989.  We disagree with petitioners that such an assessment or collection by respondent is time barred.

The Commissioner generally must assess tax against an individual within 3 years of the later of the due date or the filing date of his or her return.  Sec. 6501(a) and (b)(1); Mecom v. Commissioner, 101 T.C. 374, 381 (1993), affd. without published opinion 40 F.3d 385 (5th Cir. 1994).  Given that petitioners filed their 1988 and 1989 Federal income tax returns after their due dates, the 3-year period commences on the date of filing; i.e., November 6, 1992.  See Korshin v. Commissioner, T.C. Memo. 1995-46, affd. 91 F.3d 670 (4th Cir. 1996).  Because respondent issued the notice for the years in issue on November 3, 1995, which is within 3 years of the filing date, it is timely.[2]

### B.  Unreported Income

---

[2] Petitioners apparently agree.  They have not further argued this issue in their brief.

Respondent determined that petitioners underpaid their 1989 income tax by $29. The underpayment was attributable to the overstated short-term capital loss carryover reported and deducted on their 1989 tax return. Petitioners did not present any evidence at trial and did not argue in their brief that respondent's determination of the $29 deficiency is incorrect. We therefore sustain respondent's determination of this deficiency. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 114 (1933); Rapco, Inc. v. Commissioner, 85 F.3d 950, 954 (2d Cir. 1996), affg. T.C. Memo. 1995-128.

## C. 1988 and 1989 Additions to Tax for Fraud

Respondent argues that petitioners are liable for the additions to tax for fraud under section 6653(b)(1) for 1988 and section 6651(f) for 1989. For returns the due date for which is after December 31, 1988, determined without regard to extensions, but before December 31, 1989, section 6653(b)(1) imposes an addition to tax equal to 75 percent of the portion of an underpayment that is due to fraud. In the case of returns the due date for which is after December 31, 1989, determined without regard to extensions, section 6651(f) imposes an addition to tax where a failure to file a return is fraudulent. Because both provisions are analyzed similarly as to the determination of fraudulent intent, we consolidate our discussion of the fraud determinations. Clayton v. Commissioner, 102 T.C. 632, 653 (1994).

The additions to tax for fraud are civil sanctions "provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud." Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Fraud is defined as intentional wrongdoing on the part of the taxpayer with the specific purpose of evading a tax believed to be owing. Miller v. Commissioner, 94 T.C. 316, 332 (1990); Petzoldt v. Commissioner, 92 T.C. 661, 698 (1989). Section 7454 provides in pertinent part that "In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof in respect of such issue shall be upon the Secretary." Furthermore, Rule 142(b) requires that this burden be carried by clear and convincing evidence. Castillo v. Commissioner, 84 T.C. 405, 408 (1985).

Under section 6653(b)(1), the fraud addition is imposed where there is an underpayment of tax required to be shown on the return that is due to fraud. Once an underpayment of tax has been established, fraud is shown by proof that the taxpayer intended to conceal, mislead, or otherwise prevent the collection of his or her taxes. Spies v. United States, 317 U.S. 492, 499 (1943); Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir. 1990); Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Under section

6651(f), a fraud addition is imposed if any failure to file a return is fraudulent.

### 1. Section 6653(b)(1) Addition for Underpayment of Tax for 1988

To impose liability under section 6653(b)(1), respondent must first prove that there has been an underpayment of taxes for the year in issue. Lee v. United States, 466 F.2d 11, 16-17 (5th Cir. 1972); Plunkett v. Commissioner, 465 F.2d 299, 303 (7th Cir. 1972), affg. T.C. Memo. 1970-274. Section 6653(c)(1) defines "underpayment" as a deficiency as defined in section 6211, except that for this purpose section 6653(c)(1) provides that "the tax shown on a return referred to in section 6211(a)(1)(A) shall be taken into account only if such return was filed on or before the last day prescribed for the filing of such return".

Because petitioners did not file their 1988 Federal income tax return until November 6, 1992, there is deemed to be an underpayment of tax for 1988 equal to the amount reported as due on their delinquent return. In this situation, "a taxpayer will automatically create an 'underpayment' in the amount of the correct tax simply because he or she files an untimely return." Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990).

### 2. Fraudulent Intent

Under sections 6653(b)(1) and 6651(f), respondent must show that petitioners intended to conceal, mislead, or otherwise

prevent the collection of taxes.  Stoltzfus v. United States, supra at 1004; Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Rowlee v. Commissioner, supra at 1123.  Because direct proof of a taxpayer's intent is rarely available, fraud may be proven by circumstantial evidence and reasonable inferences may be drawn from the relevant facts. Spies v. United States, supra at 499; Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Collins v. Commissioner, T.C. Memo. 1994-409.

Courts have relied on a number of indicia of fraud in deciding section 6653(b) and section 6651(f) cases.  Indicia of fraud include:  (1) Understating income; (2) maintaining inadequate records; (3) failing to file tax returns; (4) giving implausible or inconsistent explanations of behavior; (5) concealing assets; (6) failing to cooperate with tax authorities; (7) engaging in illegal activities; (8) attempting to conceal illegal activities; (9) dealing in cash; and (10) failing to make estimated tax payments.  Recklitis v. Commissioner, 91 T.C. 874, 910 (1988).  These "badges of fraud" are nonexclusive. Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992).  The taxpayer's education and business background are also relevant to the determination of fraud.  See Wheadon v. Commissioner, T.C. Memo. 1992-633.  We turn to the indicia of fraud that are relevant to the instant case.

Respondent presented evidence on the presence of several indicia of fraud. Among other things, respondent claims that the following indicia clearly and convincingly establish fraud: Dr. Wilkinson's conviction under section 7203; petitioners' understatement of income; petitioners' failure to make estimated tax payments; petitioners' failure to file tax returns; and petitioners' failure to cooperate with tax authorities.

First, respondent argues that Dr. Wilkinson's conviction for violating section 7203 is evidence of fraud. Citing Castillo v. Commissioner, supra at 409-410, respondent also argues that Dr. Wilkinson is collaterally estopped from denying that he willfully failed to file his 1988 return. It is well settled that a taxpayer's conviction under section 7203 for a given year conclusively establishes the willfulness of that taxpayer's failure to file returns. Id. However, willful failure to file, even over an extended period of time, does not conclusively establish the fraudulent intent required under sections 6653(b) and 6651(f). Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980); see also Sarcone v. Commissioner, T.C. Memo. 1985-548. An intent to evade taxes is not an element of section 7203; that section may be violated by the willful failure to pay a tax, file a return, maintain records, or supply information. Although Dr. Wilkinson's conviction under section 7203 collaterally estops him from denying that he willfully failed to file his 1988 return, it does not bar him from arguing that his failure was

without fraudulent intent.  The conviction under section 7203 only provides some evidence of fraud as to the 1988 tax year.  It does not conclusively establish fraud for that year.  Furthermore, Dr. Wilkinson's conviction for the 1988 return does not establish fraud as to the 1989 return.

Second, respondent argues that petitioners' understatement of income is evidence of fraud.  Respondent points to the fact that petitioners failed to report in a timely manner Schedule C gross income for 1988 and 1989 in the amounts of $708,220 and $792,444, respectively.  We do not find this fact dispositive.  Petitioners did file their tax returns, even if they did so delinquently.  Except for the capital loss carryover, respondent made no adjustments to the amounts reported on those returns.  Petitioners also did not attempt to conceal assets.  They did not earn any income from illegal activities, and they did not have substantial dealings in cash.  These facts weaken respondent's argument as to this indicium of fraud.

Third, respondent argues that petitioners' failure to pay estimated taxes equal to their 1988 and 1989 tax liabilities is evidence of fraud.  We disagree.  Under the facts herein, we do not give much weight to the fact that petitioners failed to make timely estimated tax payments equal to their tax liabilities.  As a point of fact, petitioners made estimated tax payments for 1988 and 1989 totaling $5,000 and $8,000, respectively.  It is also relevant that petitioners reported (but failed to pay) a balance

due of $40,000 on their 1989 Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Returns. The Court questions why petitioners would have reported a $40,000 tax liability if it was indeed their intent to evade taxes.

Fourth, respondent argues that petitioners' failure to file timely returns, combined with their knowledge of a duty to file, is evidence of fraud. In essence, respondent argues that petitioners originally failed to file their 1988 and 1989 tax returns with fraudulent intent, and that the subsequent delinquent filing was made only after petitioners became aware of respondent's investigation. Respondent cites Blackwell v. Commissioner, T.C. Memo. 1965-252, and Niedringhaus v. Commissioner, supra at 213, for the proposition that the later filing of delinquent returns does not absolve a taxpayer of his antecedent fraud. In Niedringhaus, fraudulent intent was found where the taxpayers filed their delinquent returns only after notification of pending civil and criminal investigations.

Although it is true that petitioners failed to file timely tax returns, this action is consistent with petitioners' prior actions. Petitioners have historically filed delinquent returns, opting to satisfy their tax liability with payments that include interest, additions to tax, and/or penalties. It is also important that the record shows no affirmative acts of concealment, such as filing false information. See Zell v.

Commissioner, 763 F.2d 1139, 1146 (10th Cir. 1985), affg. T.C. Memo. 1984-152.

And finally, respondent argues that petitioners' failure to cooperate with tax authorities is evidence of fraud. We disagree. Although there is some evidence that Dr. Wilkinson was not fully accurate in responding to questions posed by respondent's agent, we do not find that these inaccuracies were the product of an intent to conceal income from respondent or otherwise evade income taxes.

We hold that respondent has failed to prove by clear and convincing evidence that petitioners fraudulently failed to file their 1988 and 1989 tax returns by intending to "conceal, mislead, or otherwise prevent the collection of the tax." See Stoltzfus v. United States, 398 F.2d at 1004; Webb v. Commissioner, 394 F.2d at 377. We hold for petitioners on this issue.

D. Failure To File Timely Under Section 6651(a)

Respondent asserts in the alternative that petitioners are liable for the section 6651(a)(1) addition to tax for their failure to file timely 1988 and 1989 Federal income tax returns. Pursuant to section 6651(a)(1), where a taxpayer fails to file a tax return on the date prescribed for filing (including any extension of time for filing), there shall be added to the tax required to be shown on the return an amount equal to 5 percent of that tax for each month or fraction thereof that the failure

to file continues, not exceeding 25 percent in the aggregate. The addition to tax is mandatory unless it is shown "that such failure is due to reasonable cause and not due to willful neglect". Sec. 6651(a)(1).

To establish reasonable cause, the taxpayer must demonstrate that he or she exercised ordinary business care and prudence and was nonetheless unable to file a return on time. Sec. 301.6651-1(c)(1), Proced & Admin. Regs.; see Spencer v. Commissioner, T.C. Memo. 1994-531. A finding of reasonable cause negates willful neglect, which has been interpreted to mean a conscious, intentional failure or reckless indifference. United States v. Boyle, 469 U.S. 241, 245 (1985). Whether "reasonable cause" and lack of "willful neglect" exist is a question of fact, and the burden of establishing these facts is on the taxpayer. Rule 142(a).

Dr. Wilkinson contends that his "underlying emotional disturbance" constitutes reasonable cause and negates a finding of "willful neglect".[3] At trial, Dr. Wilkinson presented evidence that during the relevant time period he suffered, and continues to suffer, from chronic dysphoria, a mild form of depression, and a

---

[3] We focus on Dr. Wilkinson's "reasonable cause" argument as to 1989. Petitioners are collaterally estopped from denying that Dr. Wilkinson willfully failed to file a return for 1988 because of Dr. Wilkinson's conviction under sec. 7203 for 1988. Castillo v. Commissioner, 84 T.C. 405, 409 (1985).

Non-Specific Personality Disorder encompassing elements
of Avoidant, Dependant and Obsessive Compulsive
Personality Disorders * * * resulting in [his]
recurrent victimization at [the hands of others], low
self-esteem, social and financial naivete,
perfectionism and rigidity.

Incapacity on the part of a taxpayer due to mental or
physical illness can establish reasonable cause for failure to
file timely returns.  United States v. Boyle, supra at 248 n.6;
Williams v. Commissioner, 16 T.C. 893, 906 (1951).  However, a
mental or emotional disorder does not excuse a failure to file
timely returns unless it is shown that the disorder rendered the
taxpayer incapable of exercising ordinary business care and
prudence during the period in which the failure to file
continued.  Bear v. Commissioner, T.C. Memo. 1992-690, affd.
without published opinion 19 F.3d 26 (9th Cir. 1994); Conley v.
Commissioner, T.C. Memo. 1992-215.  Moreover, a taxpayer's
selective inability to meet his or her tax obligations when he or
she can carry on normal activities does not excuse a late filing.
See Estate of McClanahan v. Commissioner, 95 T.C. 98, 101-102
(1990).

We are not convinced that Dr. Wilkinson's psychological
state during the relevant time provided reasonable cause for his
untimely filings.  Dr. Wilkinson headed up a thriving medical
practice throughout 1989.  Despite his alleged depression,
Dr. Wilkinson continued to attend to patients and perform various
medical procedures.  From 1985 to 1989, Dr. Wilkinson employed

the accounting firm of Thompson & Co. to prepare, among other things, his Federal income tax returns. In 1989, Dr. Wilkinson dismissed Thompson & Co. from their accounting duties and hired Frumkin & Lukin to provide accounting services to his medical practice and to prepare tax returns for the years in issue. These actions demonstrate Dr. Wilkinson's ability to function in his chosen profession, his business acumen, and his ability to exercise ordinary business care and prudence. Moreover, petitioners' history of filing untimely returns establishes a pattern of behavior seemingly unrelated to Dr. Wilkinson's claimed mental illness.

We conclude that petitioners are liable for the section 6651(a)(1) addition to tax for 1988 and 1989. Petitioners failed to file timely tax returns for 1988 and 1989 and have failed to carry their burden of proof on the issues of reasonable cause and willful neglect for those years.

E. Failure To Pay Estimated Taxes Under Section 6654

Respondent determined additions to petitioners' 1988 and 1989 taxes under section 6654 for underpayment of estimated Federal income tax. An addition to tax under section 6654 is mandatory absent the application of one of the exceptions contained in that section. Recklitis v. Commissioner, 91 T.C. at 913. We find that none of the exceptions apply; thus, we hold against petitioners on this issue.

F. Innocent Spouse Relief

Because the Court finds petitioners liable for the $29 deficiency and the additions to tax under sections 6651(a)(1) and 6654, we must address Mrs. Wilkinson's argument that she is an innocent spouse under section 6013(e). Mrs. Wilkinson claims that she neither knew nor had reason to know of the unreported income or the untimeliness of the returns.

Spouses are generally jointly and severally liable for the tax due on a joint Federal income tax return.[4] Sec. 6013(d)(3); Friedman v. Commissioner, 53 F.3d 523, 525 (2d Cir. 1995), affg. in part and revg. and remanding in part T.C. Memo. 1993-549; Hayman v. Commissioner, 992 F.2d 1256, 1259 (2d Cir. 1993), affg. T.C. Memo. 1992-228. This is so "regardless of the source of the income or of the fact that one spouse may be far less informed about the contents of the return than the other". Murphy v. Commissioner, 103 T.C. 111, 117 (1994); Sonnenborn v. Commissioner, 57 T.C. 373, 381 (1971).

A spouse may obtain limited relief from joint and several liability pursuant to section 6013(e). The "innocent spouse" provision of section 6013(e) relieves a spouse of joint Federal income tax liability if each of the following four requirements is met: (1) A joint Federal income tax return was filed by the

_____

[4] As a threshold argument, Mrs. Wilkinson claims that she cannot be held liable for the additions to tax because she did not have any independent income for the years in issue and had no duty to file a Federal income tax return. We disagree. It is undisputed that joint returns were filed for the years in issue.

spouses; (2) there is a substantial tax understatement attributable to grossly erroneous items of the other spouse; (3) in signing the return, the claimed "innocent spouse" did not know, and had no reason to know, of the substantial tax understatement; and (4) taking into account all the facts and circumstances, it would be inequitable to hold the claimed "innocent spouse" liable for the deficiency attributable to the tax understatements. Sec. 6013(e)(1). Mrs. Wilkinson bears the burden of proving that each of these requirements is satisfied, and her failure to satisfy any one of these requirements precludes "innocent spouse" relief. Rule 142(a); Friedman v. Commissioner, supra at 529; Bliss v. Commissioner, 59 F.3d 374, 378 (2d Cir. 1995), affg. T.C. Memo. 1993-390.

In this case we focus on the second prong of the analysis. In order for a taxpayer to qualify as an innocent spouse, there must be a substantial tax understatement which is attributable to grossly erroneous items of the other spouse. "Substantial understatement" is defined as "any understatement (as defined in section 6662(d)(2)(A)) which exceeds $500." Sec. 6013(e)(3). Referencing section 6662(d)(2)(A), "understatement" is defined as "the amount of the tax required to be shown on the return for the taxable year, over * * * the amount of the tax imposed which is shown on the return". As a threshold matter, the innocent spouse defense is not available to Mrs. Wilkinson because there is no substantial tax understatement for either 1988 or 1989. There

was no deficiency for 1988, and the 1989 deficiency was a mere $29. To meet the aforementioned definition, the understatement must exceed $500, and it does not.

We find that Mrs. Wilkinson is jointly and severally liable for the deficiency and for the additions to tax pursuant to sections 6651(a)(1) and 6654.

We have considered all arguments made by the parties for holdings contrary to those set forth above, and, to the extent not discussed above, find them to be unpersuasive, irrelevant, or without merit.

To reflect the foregoing,

Decision will be
entered for respondent in the
amount of the deficiency and
the additions to tax under
sections 6651(a) and 6654.