T.C. Memo. 1998-243

UNITED STATES TAX COURT

JUANITA CARTER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18424-94.                    Filed July 6, 1998.

Juanita Carter, pro se.

<u>Steven W. LaBounty</u>, for respondent.

MEMORANDUM OPINION

COUVILLION, <u>Special Trial Judge</u>:  This case was heard
pursuant to section 7443A(b)(3) and Rules 180, 181, and 182.[1]

---

[1]    Unless otherwise indicated, section references are to the
Internal Revenue Code in effect for the years at issue.  All Rule
references are to the Tax Court Rules of Practice and Procedure.

Respondent determined the following deficiencies in petitioner's Federal income taxes, additions to tax, and penalties for the years 1989, 1990, 1991, and 1992:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Penalty Sec. 6662(a) |
|------|-----------|--------------------------------|----------------------|
| 1989 | $1,744 | $436.00 | $332.00 |
| 1990 | 1,286 | 321.50 | 245.60 |
| 1991 | 1,489 | 372.25 | 297.80 |
| 1992 | 1,864 | 93.20 | 211.60 |

The issues for decision are: (1) Whether petitioner failed to report interest income for 1991 and 1992; (2) whether petitioner is entitled to dependency exemptions for the 4 years at issue; (3) whether petitioner is entitled to head-of-household filing status for the 4 years at issue; (4) whether petitioner is entitled to a casualty loss deduction under section 165(a) for 1989; and (5) whether petitioner is liable for additions to tax under section 6651(a)(1) and penalties under section 6662(a) for the 4 years at issue. One other adjustment, for medical expenses for the years 1989, 1991, and 1992, is computational and will be resolved by resolution of the contested issues.

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioner's legal residence was Florissant, Missouri.

During all of the years at issue, petitioner was a retired teacher, having taught for 38 years at the time of her retirement. Petitioner filed Federal income tax returns for all years at issue reporting adjusted gross income of $20,990 for 1989, $21,803 for 1990, $22,635 for 1991, and $23,574 for 1992. For each year at issue, petitioner claimed head-of-household filing status and claimed a personal exemption. Petitioner claimed three dependency exemptions for 1989, four dependency exemptions for 1990, five dependency exemptions for 1991, and three dependency exemptions for 1992. For 1989, petitioner claimed a casualty loss deduction of $5,039.

In the notice of deficiency, respondent determined that petitioner had unreported interest income of $188 for 1991 and $170 for 1992, based on information reported to respondent by the respective payers. Respondent disallowed all the dependency exemptions claimed by petitioner for each of the years at issue and, as a result thereof, also disallowed petitioner's head-of-household filing status for each of those years. Respondent disallowed petitioner's casualty loss deduction for 1989 and disallowed portions of petitioner's claimed noncash charitable contribution deductions for 1989, 1990, and 1991 and disallowed portions of petitioner's claimed home mortgage interest deduction and real estate tax deduction for 1992. Finally, respondent determined that petitioner was liable for the addition to tax,

under section 6651(a)(1), for failure to file timely Federal income tax returns and for the accuracy-related penalty under section 6662(a) for negligence or disregard of rules or regulations for all years at issue. At trial, respondent conceded that petitioner was entitled to itemized deductions for charitable contributions of $1,480, $1,252, and $1,127, respectively, for 1989, 1990, and 1991. Respondent also conceded petitioner's entitlement to an additional deduction for $4,549 for home mortgage interest and an additional deduction of $3,081 for real estate taxes for 1992.

The determinations of the Commissioner in a notice of deficiency are presumed correct, and the burden is on the taxpayer to prove that the determinations are in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). A taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions. Sec. 6001.

The first issue is whether petitioner received unreported interest income of $188 and $170 for 1991 and 1992, respectively. Based on information reported to respondent by payers, respondent determined that petitioner received unreported interest income of $188 from United Postal Savings Association for 1991, and unreported interest income of $43 from United Postal Savings Association and $127 from Lafayette Life Insurance Company for 1992. Section 61 provides that gross income includes "all income

from whatever source derived", unless otherwise provided. Further, section 61(a)(4) provides that "interest" must be included in income.

Petitioner admitted at trial that, during both 1991 and 1992, she held an interest-bearing checking account at United Postal Savings Association that did produce interest in both of those years. However, petitioner testified that, although she had made fruitless attempts to obtain verification of the amounts of interest, she had no evidence to show the amount of such interest generated by this account in either 1991 or 1992.

Petitioner also admitted at trial that, during 1992, she was the owner and beneficiary of a life insurance policy on the life of her mother, Geneva, which policy was held by Lafayette Life Insurance Co. and had a face value of $2,000. Petitioner testified that she never received any interest payments from the life insurance policy during 1992, and that the amount at issue herein was not interest but was, rather, a dividend that was not paid to her but was added to the value of the policy. Petitioner produced no documentary evidence or testimony of other witnesses to support this allegation. It is well established that this Court is not required to accept self-serving testimony in the absence of corroborating evidence. Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Petitioner failed to satisfy her burden of proof on this issue. On this record, the Court holds that petitioner had unreported interest income of $188 for 1991 and $170 for 1992, as determined by respondent in the notice of deficiency. Respondent, therefore, is sustained on this issue.

The second issue is petitioner's entitlement to various dependents claimed by petitioner on her income tax returns for the years at issue. The following table shows the dependents claimed by petitioner, their relationship to her, and the year or years such dependents were claimed:

| Name & Relationship | 1989 | 1990 | 1991 | 1992 |
|---|---|---|---|---|
| Geneva Carter (mother) | ✔ | ✔ | ✔ | ✔ |
| John Carter (brother) | ✔ | ✔ | ✔ | ✔ |
| Albert Carter (brother) | ✔ | | | |
| Char Nea Harris (grandniece) | | ✔ | ✔ | ✔ |
| Pierce Carter (brother) | | | ✔ | |
| Shauneille Carter (sister) | | ✔ | ✔ | |
| Total | 3 | 4 | 5 | 3 |

Respondent disallowed all of the claimed dependents on the ground that petitioner failed to establish that she had provided more than one-half of their support.

At trial, petitioner conceded her claim to a dependency exemption for her sister, Shauneille, for the years 1990 and 1991.

Geneva Carter, John Carter, Albert Carter, and Pierce Carter lived in a house, separate from petitioner but which was owned by petitioner and, for convenience, is referred to as the Lurch Street house. This house was fully paid for; however, on March 19, 1990, the house was acquired by condemnation by the St. Louis airport authority and, therefore, was no longer owned by petitioner. Petitioner's relatives, however, continued living in the house until July 3, 1991, when they moved to another house petitioner acquired as a replacement for the Lurch Street house that was condemned. Neither petitioner nor her relatives paid any rent to the St. Louis airport authority during the period from March 19, 1990, to July 3, 1991.

Char Nea Harris, petitioner's grandniece, and Shauneille, petitioner's sister, lived with petitioner at their house, which, for convenience, is referred to as the Amblewood Street residence. That home was encumbered with a mortgage, as to which petitioner was allowed itemized deductions for home mortgage interest and real estate taxes.

Petitioner's three brothers, John, Albert, and Pierce, were adults.  While none of them had full-time jobs, it appears that each earned some income during the years at issue from odd jobs.  Petitioner's mother, Geneva, was in her 80's, and her only income was Social Security benefits of $450 per month.

The grandniece, Char Nea Harris, was born in 1986, and both her parents were deceased.  However, at some point, the date of which is not set out in the record, Char Nea was adopted by petitioner's sister, Shauneille.

Petitioner's only income, except for the interest discussed above, was her retirement benefits, which ranged from $22,990 to $23,574 for the years at issue.  Petitioner contends that she provided more than one-half the total support for the named dependents (except for her concession of the dependency exemption as to her sister Shauneille).

Section 151(c) allows taxpayers to deduct an annual exemption amount for each "dependent", as defined in section 152.  Under section 152(a), the term "dependent" means certain individuals over half of whose support was received from the taxpayer during the taxable year in which such individuals are claimed as dependents.  Eligible individuals who may be claimed as dependents include, among others, a brother, mother, and foster child of the taxpayer.  Sec. 152(a)(3) and (4), (9).

Section 151(c)(1) further provides, as a condition for the dependency exemption, that the gross income of the dependent for the taxable year be less than the "exemption amount" for that year, unless the claimed dependent is a child of the taxpayer under the age of 19 (24 if the child is a student).[2]  Social Security payments are not "income" within the meaning of section 151 unless the recipient is subject to section 86(a); however, in determining whether a taxpayer contributed over half the support of another, amounts of support paid by Social Security benefits are considered.  See Black v. Commissioner, T.C. Memo. 1972-135.  Thus, for purposes of section 151, Geneva (petitioner's mother) had no income for the year in question.  However, in determining whether petitioner contributed over half of Geneva's support during the relevant years, the Court must consider the Social Security benefits received by Geneva in those years.

Respondent agrees that petitioner would be entitled to a dependency deduction for Geneva, but for the fact that petitioner did not provide over one-half of Geneva's support during the relevant years, as required by section 152.  Respondent contends that Geneva's Social Security benefits exceeded one-half of the amount spent for her support for each of the years at issue.

_____

[2]    Under sec. 151(d)(1) and (4), the "exemption amount" was $2,000 for 1989, $2,050 for 1990, $2,150 for 1991, and $2,300 for 1992.

Petitioner argues that the Social Security benefits received by her mother cannot be attributed solely to her support because, petitioner contends, the benefits were not used exclusively for Geneva's support because petitioner's brothers routinely used Geneva's Social Security benefits for their own support.  Thus, petitioner argues, only a portion of the Social Security benefits should be considered to have supported Geneva each year.

Despite the fact that Geneva's Social Security benefits may have been used by petitioner's brothers and, thus, may have been used for their support, the Court must reject petitioner's contention that such amounts used to support others are not to be considered as support for the dependent in question.  Section 1.152-1(a)(2)(i), Income Tax Regs., provides that, in determining whether an individual received over half of his support from the taxpayer, "there shall be taken into account the amount of support received from the taxpayer as compared to the entire amount of support which the individual received from all sources, including support which the individual himself supplied."  The Court has interpreted this regulation to mean:

> any amount contributed to a common family fund by a
> particular member of the household is deemed to have
> been supplied in full for his support when such amount
> is less than his aliquot share of the entire fund.
> * * *  Simply because the total cost of support for all
> family members is prorated does not justify a proration
> of a contributing member's earnings.  Such an
> interpretation would produce an illogical and
> unrealistic result since it would then be possible for

> a member to contribute more to a common family fund
> than would be spent for his support and still be
> treated as not supporting himself. * * * [De La Garza
> v. Commissioner, 46 T.C. 446, 449 (1966), affd. per
> curiam 378 F.2d 32 (5th Cir. 1967); see also Meenk v.
> Commissioner, T.C. Memo. 1970-302.]

Since the entire amount contributed by Geneva must first be applied toward her own support, petitioner must show that the amount of Geneva's Social Security benefits, for each year, was less than half of the amount expended for Geneva's support in each year, in order for petitioner to be entitled to a dependency exemption for Geneva for each year in question.

In Blanco v. Commissioner, 56 T.C. 512, 514-515 (1971), this Court held that, in establishing that more than one-half of a dependent's support has been provided, a prerequisite to such a showing is the demonstration by competent evidence of the total amount of the dependent's support from all sources for that year. If the amount of total support is not established and cannot be reasonably inferred from competent evidence available to the Court, it is not possible to conclude that the taxpayer claiming the exemption provided more than one-half of the support of the claimed dependent.

Petitioner failed to establish the total amount expended for Geneva's support from all sources for the relevant years, and, moreover, the Court is unable to reasonably infer this information from the evidence presented. Petitioner failed to

satisfy her burden of proving that she provided over one half of Geneva's support during any of the relevant years. On this record, the Court holds that petitioner is not entitled to a dependency exemption for Geneva during any of the relevant years.

The same holds for petitioner's brothers, John, Albert, and Pierce. Petitioner produced no evidence to show their total support for any of the years in which they were claimed as dependents. Petitioner made estimates of these amounts; however, not one of her estimates was corroborated by any documentary evidence. Petitioner admitted that at least two of her brothers, Albert and John, earned some amounts of money during the relevant years. Moreover, for the period from March 19, 1990, to July 3, 1991, petitioner did not provide their housing because, during that period, petitioner did not own the home her mother and the brothers occupied because that property had been acquired by the St. Louis airport authority. Additionally, John's earned income was $3,912, $4,060, $4,080, and $4,080, respectively, for 1989, 1990, 1991, and 1992. Thus, his income was greater than the "exemption amount" provided in section 151(c)(1), and that factor alone precludes petitioner's entitlement to a dependency exemption for him. See supra note 2.

With respect to petitioner's brother Pierce, who was claimed as a dependent only for 1991, petitioner also provided no evidence as to his total support, nor did she present any

documentation to establish the amounts that she provided for his support.

On this record, petitioner failed to establish her entitlement to dependency exemptions for her brothers John, Albert, and Pierce for any of the years at issue. Respondent, therefore, is sustained on this issue.

Finally, with respect to petitioner's grandniece, Char Nea Harris, who was claimed as a dependent for 1990, 1991, and 1992, although the child lived with petitioner, the record also shows that petitioner's sister, Shauneille, lived with petitioner and Char Nea for at least 1990 and 1991. Shauneille adopted Char Nea at some time. Shauneille was also gainfully employed during these years. Given these circumstances, it is evident to the Court that Shauneille provided some support to Char Nea during the years in question. Again, petitioner presented no evidence to show Char Nea's total support for these years and no documentation that would support petitioner's contention that petitioner's contribution toward that support was one-half or more of the total support. Respondent, therefore, is sustained on this issue.

The third issue is whether petitioner is entitled to head-of-household filing status for 1989, 1990, 1991, and 1992. Section 2(b) defines a head-of-household as an individual taxpayer who (1) is not married at the close of the taxable year,

and (2) maintains as a home a household that constitutes "for more than one-half of such taxable year" the principal place of abode (as a member of such household) of a son, daughter or other qualifying dependent (for which the taxpayer is entitled to a deduction under section 151) of the taxpayer. Sec. 2(b).[3] For this purpose, a taxpayer is considered to maintain a household only when: (1) The household constitutes the home of the taxpayer for the taxpayer's taxable year, and (2) the taxpayer pays over half of the cost of running the household. Sec. 2(b)(1); sec. 1.2-2(d), Income Tax Regs. Section 1.2-2(d), Income Tax Regs., further provides:

> The cost of maintaining a household shall be the expenses incurred for the mutual benefit of the occupants thereof by reason of its operation as the principal place of abode of such occupants for such taxable year. The cost of maintaining a household shall not include expenses otherwise incurred. The expenses of maintaining a household include property taxes, mortgage interest, rent, utility charges, upkeep and repairs, property insurance and food consumed on the premises. Such expenses do not include the cost of clothing, education, medical treatment, vacations, life insurance, and transportation. * * *  [Emphasis added.]

Respondent contends that petitioner did not, during any of the years at issue, maintain such a household, nor did she

---

[3] Under sec. 2(b)(1)(A), with respect to a son, stepson, daughter, stepdaughter, or descendants of a son or daughter, such individuals need not be dependents of the taxpayer under sec. 151 unless such individuals are married, in which event, they must also qualify as dependents under sec. 151.

provide over one half of the cost of maintaining such a household.

During the years in question, petitioner lived in her home with Char Nea and Shauneille. The Court has held that petitioner failed to prove she contributed more than one half of Char Nea's support for any of the years at issue; thus, she is not entitled to a dependency exemption for Char Nea for any of those years. Moreover, petitioner conceded that she is not entitled to dependency exemptions for Shauneille for 1990 and 1991, and she did not claim them for 1989 and 1992. Consequently, neither Char Nea nor Shauneille can be considered as qualifying dependents for purposes of section 2(b). Likewise, petitioner failed to prove she provided over one half of the cost of maintaining a household for any other qualifying dependent.

On this record, the Court holds that petitioner is not entitled to head-of-household filing status for any of the years at issue. Respondent is, therefore, sustained on this issue.

The fourth issue is whether petitioner is entitled to a casualty loss deduction, under section 165(a), in the amount of $5,039 for 1989. On her income tax return for 1989, petitioner included five Forms 4684, Casualties and Thefts, pursuant to which she claimed casualty losses of $6,488. After application of the 10-percent adjusted gross income floor, the amount of the loss, $4,389, was carried over to Schedule A, Itemized

Deductions, to which amount petitioner added $250 for "Theft" and $400 for a bad debt, all of which totaled $5,039 as a casualty loss claim. Petitioner contends that she sustained the casualty during 1989 as a result of an eminent domain action against her Lurch Street home in connection with the expansion of the St. Louis Municipal Airport (airport). Pursuant to such eminent domain procedures, petitioner sold her house to the City of St. Louis, Missouri, during 1989 and secured alternate housing. Petitioner contends that, at some time during 1989, the airport arranged for the moving of petitioner's personal belongings from her old home into her new home; however, some items of her personal property were left behind in the basement of her former home, and, before petitioner had the opportunity to retrieve her personal property, the airport demolished the home, including her personal property.

On August 23, 1993, petitioner filed a Complaint in the U.S. District Court for the Eastern District of Missouri (District Court) against the airport requesting, among other relief, reimbursement for her damaged personal property. On October 27, 1995, the District Court dismissed petitioner's Complaint, with prejudice.

Petitioner contends that she should be allowed to deduct the full amount of her loss in 1989 as a casualty loss because she

was unsuccessful in collecting any judgment against the airport, and, as a result, she was not compensated for her loss.[4]

Respondent contends that petitioner's casualty loss is not deductible until such time as there is no reasonable prospect of a recovery of such loss. Respondent argues that petitioner's loss did not become uncollectible until 1995 because, up until that time, petitioner continued her efforts to collect damages from the airport; thus, the possibility existed that her loss would be compensated for after 1989 up until the disposition of her suit in October 1995. Additionally, respondent contends that petitioner failed to substantiate either her basis in or the fair market value of the damaged property.

Section 165(a) allows a taxpayer to deduct any loss sustained during the taxable year and not compensated for by insurance or otherwise. In particular, section 165(c)(3) allows a deduction to an individual for loss of property not connected with a trade or business or a transaction entered into for profit, if such loss arises from fire, storm, shipwreck, or other casualty, or from theft. Personal casualty or theft losses are deductible only to the extent that the loss exceeds $100 and 10 percent of adjusted gross income. Sec. 165(h)(1) and (2).

---

4    Respondent does not contend that any portion of the losses was compensated by insurance.

The measure of a casualty or theft loss is determined by section 1.165-7(b)(1), Income Tax Regs. Generally, the loss shall be the lesser of (1) the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty, or (2) the amount of the adjusted basis prescribed in section 1.1011-1, Income Tax Regs., for determining loss from the sale or other disposition of the property. Under section 1.1011-1, Income Tax Regs., adjusted basis is the cost or other basis of property under section 1012, adjusted to reflect allowable deductions for depreciation under section 1016. In this case, petitioner does not contend that any of the relevant property was ever used in a trade or business; consequently, the cost or basis of the property was not subject to adjustment for depreciation. Petitioner produced no evidence of her basis in or the fair market value of the relevant damaged items of property.

Apart from petitioner's failure to establish basis, section 1.165-1(d), Income Tax Regs., provides:

> Year of deduction. (1) A loss shall be allowed as a deduction under section 165(a) only for the taxable year in which the loss is sustained. * * * (2)(i) If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery

exists with respect to a claim of reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. Whether or not such reimbursement will be received may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim. * * * [Emphasis added.]

In 1993, petitioner filed suit against the airport seeking compensation for the loss of her property. In 1995, her suit was dismissed with prejudice. Her efforts to obtain reimbursement for her loss subsequent to 1989 are clear. Petitioner obviously felt that she had a reasonable prospect of collecting a judgment or other compensation for her loss during or after 1989. Not until 1995, when her suit was dismissed with prejudice, did petitioner's loss become "sustained" within the meaning of section 165 because, only at that time, could it be "ascertained with reasonable certainty" that petitioner would not receive compensation for her loss. It follows that petitioner did not "sustain" (as defined in section 1.165-1(d)(2)(i), Income Tax Regs.) a casualty loss in 1989, as required under section 165(a) in order for such loss to be deductible in that year. Respondent is, therefore, sustained on this issue.

The fifth issue is whether petitioner is liable for the addition to tax under section 6651(a)(1) for failure to file timely a Federal income tax return for 1989, 1990, 1991, and 1992 and the penalty under section 6662(a) for negligence or intentional disregard of rules or regulations.

Section 6651(a)(1) imposes an addition to tax for a taxpayer's failure to file a timely return, unless the taxpayer can establish that such failure "is due to reasonable cause and not due to willful neglect".

Respondent introduced postmarked envelopes, in which petitioner's Federal income tax returns for 3 of the 4 years at issue were mailed, showing that petitioner mailed her 1990 Federal income tax return, the due date for which was April 15, 1991, on November 11, 1991; her 1991 Federal income tax return, the due date for which was April 15, 1992, on March 3, 1993; and her 1992 Federal income tax return, the due date for which was April 15, 1993, on August 17, 1993. Additionally, respondent introduced official Internal Revenue Service transcripts of account for petitioner's Federal income taxes (transcripts) for each of the years at issue, which reflected that petitioner's 1989 Federal income tax return was filed on March 16, 1992, her 1990 Federal income tax return was filed on December 23, 1991, her 1991 Federal income tax return was filed on March 22, 1993, and her 1992 Federal income tax return was filed on September 27, 1993. The transcripts also reflected that petitioner had not requested nor had she been granted a filing extension for any of the years at issue.

Petitioner contends that she filed timely her 1989 Federal income tax return but that respondent lost the original return

and requested she file another one, which she did. Petitioner claims that the March 16, 1992, filing date listed on the transcript of her 1989 tax year actually reflected the filing of the copy of her return and did not reflect the date of her original filing of her 1989 return (which respondent allegedly misplaced). Petitioner produced no documentary evidence to support this allegation. The Court is satisfied, on this record, that March 16, 1992, is the original filing date of petitioner's 1989 Federal income tax return and that such return was not filed timely.

Petitioner admits that the envelopes marked November 11, 1991, March 3, 1993, and August 17, 1993, reflected the actual mailing dates of her returns for 1990, 1991, and 1992, respectively; however, she argues that various illnesses prior to the due dates for each of these three returns incapacitated her to a degree that she could not file timely her returns. Petitioner also contends that she requested and received an extension of time to file each of these three returns; however, she failed to produce copies of such extensions at trial.

Petitioner was in an automobile accident in March 1991 that resulted in the spraining of her back; in 1992 she had conjunctivitis and her doctor "gave [her] the wrong medicine and blinded [her]"; and, in 1993, she had another auto accident that caused her additional physical pain. In support of her claims,

petitioner introduced an ambiguous document of unspecified origin entitled "Settlement Authority" that appears to evidence a settlement in the matter of "Juanita Carter v. Jeffrey Clark (American Family)", the date of injury being March 5, 1990. The document fails to indicate whether the "settlement" described therein was made in connection with an administrative claim, a lawsuit, or any other similar proceeding. Petitioner also introduced a collection of medical bills consisting of: (1) A bill from DePaul Health Center for services rendered on October 5, 1991, apparently in relation to an eye problem; (2) three bills from St. Louis Eye Clinic for services rendered on October 7, 1991, January 8, 1992, and February 26, 1992; (3) a bill from Emergency Physician Services for services rendered at DePaul Health Center on September 26, 1992, in relation to a back sprain; (4) a bill from Ernst Radiology Clinic, Inc., for services rendered on September 26, 1992, in relation to neck and back pain; (5) a bill from DePaul Health Center for services rendered on December 7, 1992, in relation to diagnostic chest x rays; and (6) a bill from Ernst Radiology Clinic, Inc., for services rendered on December 7, 1992, in relation to pneumonia. Most of these documents fail to correspond with petitioner's testimony regarding the timing of her several ailments during the years at issue. Moreover, although the Court is satisfied that petitioner experienced medical problems during the years in

question, petitioner failed to show that any such illnesses or injuries incapacitated her to the point that she could not, with reasonable effort, file on time her Federal income tax returns for the years at issue.  The Court finds, on this record, that petitioner's Federal income tax returns for 1990, 1991, and 1992 were not filed timely and that the late filings were not due to reasonable cause.  Respondent, therefore, is sustained on this issue.

The final issue is whether petitioner is liable for the accuracy-related penalty under section 6662(a) for negligence or disregard of rules or regulations, for 1989, 1990, 1991, and 1992.  Section 6662(a) provides that, if it is applicable to any portion of an underpayment in taxes, there shall be added to the tax an amount equal to 20 percent of the portion of the underpayment to which section 6662 applies.  Section 6662(b)(1) provides that section 6662 shall apply to any underpayment attributable to negligence or disregard of rules or regulations.

Section 6662(c) provides that the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations.  Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person

would do under the circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985).

However, under section 6664(c), no penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.  The Commissioner's determination is presumptively correct and will be upheld unless the taxpayer is able to rebut the presumption.  Luman v. Commissioner, 79 T.C. 846, 860-861 (1982); Bixby v. Commissioner, 58 T.C. 757 (1972); Reily v. Commissioner, 53 T.C. 8 (1969).

In the notice of deficiency, respondent applied the section 6662(a) penalty to "all of the underpayment of tax" for each of the years at issue, due to petitioner's "negligence or intentional disregard of rules or regulations".

With regard to those adjustments conceded by petitioner and those sustained by this Court, petitioner presented no evidence to show that she used due care in failing to report interest income, claiming dependency exemptions, claiming head-of-household filing status, and claiming the casualty loss deduction, nor did she present evidence to show that she had reasonable cause to omit such items of income and claim such exemptions, deductions, and filing status.

On this record, the Court holds that petitioner negligently or intentionally disregarded rules or regulations with regard to the underpayment of tax for each year at issue, with the exception of those adjustments conceded by respondent. Accordingly, the accuracy-related penalty under section 6662(a) is sustained.

<u>Decision will be entered under Rule 155.</u>