T.C. Memo. 2006-230


UNITED STATES TAX COURT


ESTATE OF MARGARET LANDERS, DECEASED, DALE SELTZER,
CO-ADMINISTRATOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 5791-05, 5792-05L,    Filed October 26, 2006.
         11015-05L.


Elliott H. Kajan and Steve Mather, for petitioner.

Elaine T. Fuller, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  In docket No. 5791-05, the Estate of Margaret

Landers, Deceased, Dale Seltzer, Co-Administrator, petitioned the

Court to redetermine a $13,447.46 addition to tax determined by

respondent under section 6651(a)(1).[1]  The $13,447.46 related to a $53,790 deficiency in the Federal estate tax of the Estate of Margaret Landers (the estate).  The estate had paid the deficiency before the notice of deficiency was issued.  In docket No. 5792-05L, petitioner petitioned the Court to review a determination by respondent's Office of Appeals (Appeals) sustaining a lien relating to the estate's liability for assessed additions to tax under section 6651(a)(1) and (2).  Those assessed additions to tax related to the tax reported on the estate's Federal estate tax return (the estate tax return).  In docket No. 11015-05L, petitioner petitioned the Court to review a determination by Appeals sustaining a levy proposed by respondent to collect the just-mentioned assessed additions to tax, plus interest.

The three cases resulting from these petitions were consolidated for purposes of trial, briefing, and opinion.  On May 11, 2006, the Court granted the unopposed motion to amend the petition in docket No. 5791-05 to allege that the estate overpaid additions to its Federal estate tax and was entitled to a refund. The amendment alleged that the estate paid $470,098.56 for which it was not liable, consisting of:  (1) A $340,070.40 addition to tax under section 6651(a)(1) relating to the tax reported on the

---

[1] Unless otherwise indicated, section references are to the applicable version of the Internal Revenue Code.

estate tax return and (2) a $130,028.16 addition to tax under section 6651(a)(2). The estate paid the $470,098.56 (but not the related interest) on May 4, 2006.

Following a trial of these cases, we decide whether either the late filing of the estate tax return or the late payment of the related tax was due to reasonable cause. We hold that neither was.

FINDINGS OF FACT

1. <u>Preface</u>

Some facts were stipulated. We incorporate herein by this reference the parties' stipulation of facts and the exhibits submitted therewith. We find the stipulated facts accordingly.

Margaret Landers (decedent) died on January 21, 2000. The coadministrators of the estate were Dale Seltzer (Seltzer) and Mark Gershon (Gershon). The coadministrators each vowed to "perform the duties of personal representative according to law". Gershon died on December 13, 2003, and Seltzer is now the estate's sole administrator. Seltzer resided in Los Angeles, California, when the petitions were filed in these cases.

2. <u>Robert Landers</u>

Robert Landers was decedent's husband, and he died on January 29, 1993. In 1984, Robert Landers and decedent (collectively, the Landerses) established a revocable trust (trust). The trust held most of decedent's property. Seltzer

and Gershon were the cotrustees of the trust, and Seltzer and his wife were the trust's primary beneficiaries.

3. Seltzer

Seltzer is the nephew of the Landerses. In 1988, Seltzer began working for the Landerses managing their real estate holdings (mostly, rental properties). Seltzer's managerial duties included collecting rent, handling repairs, and paying bills. As to the trust, Seltzer's responsibilities included assuring that all of decedent's expenses were paid timely and in full and that all of the rents were collected and deposited into the appropriate bank accounts.

Daly Property Management (DPM) and GlenLee, LLC (GlenLee), are real estate management businesses in which Seltzer (or his family) have ownership interests. Seltzer is DPM's president and GlenLee's general managing partner.

4. Gershon

Gershon was an enrolled agent who performed the tax and accounting services for the rental properties owned directly or indirectly by the Landerses. Gershon also prepared the estate tax return and prepared the trust's 2000 Federal income tax return. The trust's 2000 Federal income tax return was signed by Seltzer on April 14, 2001, and received by respondent for filing on April 18, 2001.

When decedent died, Gershon was in good health and of sound mind. Approximately 13 months later, on February 23, 2001, Gershon slipped and fractured his hip. Before this accident, the coadministrators met two to three times a week to effect the business of the estate. After the accident (including during the short period that Gershon was hospitalized for the hip injury), the coadministrators continued to meet two to three times a week to effect the business of the estate. Gershon was active and upbeat after his accident.

5. <u>The Estate Tax Return</u>

The estate tax return was originally due on October 21, 2000. Pursuant to a request for an extension made by Gershon on October 17, 2000, the due date for that return was extended to April 21, 2001. Gershon's request was accompanied by a payment of $2.4 million and included a request to extend the time to pay the tax related to the estate tax return. Pursuant to Gershon's request, the time to pay the tax was extended to October 21, 2001.

The coadministrators filed the estate tax return on February 4, 2002, reporting a liability of $3,911,424 and a balance due of $1,669,222 ($3,911,424 of estate tax - $2.4 million paid with the extension request + reported interest due of $157,798). The return was accompanied by a payment of $600,000. On April 1, 2002, respondent assessed as to the return additions to tax under

section 6651(a)(1) and (2) of $340,070.40 and $130,028.16, respectively, and related interest of $192,962.20.

As of the date of decedent's death, the estate held assets with an aggregate value in excess of $9 million. After the estate tax return was filed, the estate paid the following amounts toward its tax liability: $500,000 on April 29, 2002, $500,000 on May 13, 2002, and $104,386.20 on June 11, 2002. The coadministrators obtained the funds to make these three payments by refinancing some of the estate's real property. These three payments paid the balance of the estate tax shown as due on the return, plus the assessed interest.

Seltzer knew there was a deadline to file the estate tax return and that an extension of time had been obtained for filing that return. Seltzer did not ascertain the extended due date for the return or attempt to ascertain the extended due date from anyone other than Gershon but was content to rely on Gershon to file the estate tax return timely. Seltzer's habit was to satisfy obligations immediately, and when the estate tax return was being prepared, Seltzer made sure that the bills of DPM and GlenLee were paid. Seltzer was in good health throughout the time that the estate tax return was under preparation.

6. The Audit of The Estate Tax Return

Respondent audited the estate tax return and proposed a deficiency of $53,790 and an addition to tax of $13,447.46 under

section 6651(a)(1).  On or about January 28, 2004, respondent issued to the estate a 30-day letter reflecting the proposed adjustments.  The estate paid the deficiency but disputed the addition to tax.  By letter dated February 25, 2004, the estate protested both the addition to tax under section 6651(a)(1) asserted with respect to the deficiency and the additions to tax assessed upon the filing of the estate tax return (the protest).

7.  Filing of a Lien and Proposal of a Levy

Respondent filed a notice of Federal tax lien on February 25, 2004.  One day later, respondent issued to the estate a Notice of Intent to Levy and Notice of Your Right to a Hearing.  On March 1, 2004, respondent sent to the estate a Notice of Federal Tax Lien Filing and Your Right to A Hearing Under IRC 6320.  On March 23, 2004, Appeals received from the estate a request (request) for a hearing (hearing) as to both the lien notice and the levy notice.  By letter dated June 22, 2004, Appeals Team Manager George Riter contacted the estate regarding the request.

8.  The Protest

The protest (and not the hearing) was assigned to Appeals Officer James Christianson (Christianson).  Christianson considered both the deficiency portion of the addition to tax under section 6651(a)(1) and the additions to tax assessed under section 6651(a)(1) and (2).  On January 20, 2005, respondent

issued to the estate a notice of deficiency that informed it that Christianson had rejected the protest to the extent of the disputed deficiency portion of the section 6651(a)(1) addition to tax. The notice of deficiency contained no determination as to the assessed additions to tax.

9. <u>The Hearing</u>

Following the issuance of the notice of deficiency, respondent resumed his administrative proceeding concerning the request. The request was assigned to Appeals Officer Michael Beecher. By letter dated February 9, 2005, Beecher contacted the estate regarding the request. The letter noted that the estate had had a previous hearing with Appeals regarding the section 6651(a)(1) addition to tax and invited the estate to raise any other relevant issue and to provide financial information in order for Appeals to consider collection alternatives. The estate did not respond to the February 9, 2005, letter.

Appeals (through Christianson) determined that the lien was not unnecessarily intrusive and on March 10, 2005, issued the estate a notice of determination approving the lien. Appeals (through Christianson) determined that the proposed levy was not unnecessarily intrusive and on May 27, 2005, issued the estate a notice of determination approving the levy.

OPINION

We decide whether the estate is liable for the additions to tax respondent determined under section 6651(a)(1) and (2). The coadministrators filed the estate tax return late and paid much of the related tax late. Petitioner argues that the coadministrators exercised ordinary business care and prudence in trying to file the return timely and to pay the tax timely. As to the untimely filing, petitioner argues that Seltzer lacked the knowledge to file the return timely, that Seltzer therefore relied on Gershon to file the return timely, and that Gershon's hip fracture resulted in the return's untimely filing. Petitioner also argues that Seltzer's reliance on Gershon to file the return timely was reasonable because Cal. Prob. Code sec. 16012 (West Supp. 2006) allowed Seltzer to delegate the duty of filing the return to Gershon as long as Seltzer regularly monitored Gershon's actions underlying that filing. Petitioner argues as to the untimely payment that Gershon's hip fracture also resulted in the late payment and that Seltzer could not pay any of the estate tax owed until Gershon calculated the amount of estate tax due.

We disagree with petitioner that there was reasonable cause for either the late filing or the late payment.

1.  Addition to Tax for Late Filing

Section 6651(a)(1) provides an addition to tax of 5 percent per month (up to a maximum of 25 percent) for a failure to file a timely tax return, unless it is shown that the untimely filing is due to reasonable cause and not due to willful neglect. Respondent has met his burden of production under section 7491(c) as to the applicability of section 6651(a)(1), and petitioner bears a "heavy" burden of now proving that the coadministrators had reasonable cause for filing the estate tax return late. United States v. Boyle, 469 U.S. 241, 245 (1985); see Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Reasonable cause may be found if the coadministrators exercised ordinary business care and prudence and were nevertheless unable to file the estate tax return on time. See United States v. Boyle, supra at 246; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioner has failed to persuade us that the late filing of the estate tax return was due to reasonable cause or, in other words, to the exercise of ordinary business care and prudence on the part of the coadministrators. As to Gershon, he fractured his hip approximately 2 months before the extended due date of the estate tax return, and the record does not establish why Gershon waited until those last 2 months to file the return. Even so, we see no reason why Gershon could not have filed that return timely. Gershon continued working after fracturing his

-11-

hip, and he regularly met with Seltzer concerning business matters. Gershon also filed the trust's return at approximately the same time that the estate tax return was due. The estate tax return was filed more than 9 months late, or in other words more than 1 year after Gershon fractured his hip. We decline to find on the basis of the record at hand that Gershon's accident was sufficiently disabling to constitute reasonable cause for failing to file the estate tax return timely.

Nor do we agree with petitioner that Seltzer's actions in this matter constitute reasonable cause. As a fiduciary of the estate, Seltzer was responsible for ascertaining the dates when the return and the tax payment were due and making sure that those dates were met. See Estate of DiRezza v. Commissioner, 78 T.C. 19, 33-34 (1982). Yet, Seltzer never ascertained the due date of the estate tax return let alone made sure that the due date was met. These responsibilities were nondelegable duties assumed by Seltzer when he accepted the job as coadministrator of the estate, see United States v. Boyle, supra at 249, and Seltzer's claim that he tried to delegate this responsibility to Gershon does not amount to reasonable cause.

Petitioner reads Cal. Prob. Code sec. 16012 to conclude that Seltzer was allowed to delegate the timely filing of the estate

tax return to Gershon.[2]  We read that section as it is written and come to a contrary conclusion.  The fact that Seltzer's duty to file the estate tax return timely is an act "that the trustee [Seltzer] can reasonably be required personally to perform" is quickly seen from the Supreme Court's observation in <u>United States v. Boyle</u>, <u>supra</u> at 252, that it takes no special expertise to ascertain the due date of a tax return or to make sure that the due date is met.  Such is especially so given that Seltzer was not laboring under any disability which might excuse his failure to exercise the requisite ordinary business care and prudence; he was in good health and even made sure that the bills of DPM and GlenLee were paid timely and in full.  Seltzer's selective inability to meet his tax obligations as a coadministrator of the estate, when he continued to conduct normal business operations, supports our finding that the reasonable cause exception has not been met as to him.  See <u>Bear</u>

---

[2]  Cal. Prob. Code sec. 16012 (West Supp. 2006) provides in relevant part:

> SEC.  16012.  Delegation of duties; prohibitions; exceptions
>
> (a) The trustee has a duty not to delegate to others the performance of acts that the trustee can reasonably be required personally to perform * * *.
>
> (b) In a case where a trustee has properly delegated a matter to an agent, cotrustee, or other person, the trustee has a duty to exercise general supervision over the person performing the delegated matter.

v. Commissioner, T.C. Memo. 1992-690, affd. without published opinion 19 F.3d 26 (9th Cir. 1994).  While petitioner asks the Court to adopt a different rule because Seltzer is not a tax professional, we decline to do so.[3]

2.  Addition to Tax for Late Payment

Section 6651(a)(2) provides an addition to tax of 0.5 percent per month (up to a maximum of 25 percent) for failing to pay on or before the payment due date the taxes shown on a return, unless that failure to pay is due to reasonable cause and not due to willful neglect.  See United States v. Boyle, supra at 245; Crocker v. Commissioner, 92 T.C. 899, 912 (1989); sec. 301.6651-1(a)(2), Proced. & Admin. Regs.  Again, respondent has met his burden of production under section 7491(c) as to the applicability of section 6651(a)(2), and petitioner bears a burden of proving that the coadministrators had reasonable cause in paying the estate's estate tax late.  See Higbee v. Commissioner, 116 T.C. at 446-447.  Reasonable cause may be found if the taxpayer exercised ordinary business care and prudence and nevertheless either was unable to pay the tax or would have

---

[3] Petitioner does not claim that Seltzer is other than an "ordinary person"; i.e., "one who is physically and mentally capable of knowing, remembering, and complying with a deadline", United States v. Boyle, 469 U.S. 241, 253 (1985) (Brennan, J., concurring), and we view him to be an "ordinary person".  Thus, we do not address the point made by Justice Brennan in his concurrence in Boyle that a different rule may apply when a fiduciary is unable to meet the standard of "ordinary business care and prudence".

suffered undue hardship if the tax had been paid by the due date. See sec. 301.6651-1(c), Proced. & Admin. Regs.

Petitioner makes no claim that the estate would have suffered undue hardship if the estate had paid the tax by the due date, and we do not find independently on the basis of the record at hand that such would have been the case. The thrust of petitioner's argument is that Gershon's hip injury prevented him from preparing the estate tax return in time to pay the estate tax timely and that Seltzer could not otherwise pay that tax because he needed the return to know how much tax to pay. We are unpersuaded. For the reasons stated above in our discussion of the addition to tax for late filing, we conclude that the coadministrators did not exercise ordinary business care and prudence in attempting to pay the tax timely. We add that we believe that an ordinary and reasonable person in Seltzer's position would have consulted another individual as to the estate tax return had he or she known that the return was on extension and believed that the current preparer was suffering from a disability.

We hold that the estate is liable for the additions to tax at issue.  We have considered all of petitioner's arguments for a contrary holding and conclude that those arguments not discussed herein are without merit.

<u>Decisions will be entered</u>

<u>for respondent</u>.