T.C. Summary Opinion 2010-30


UNITED STATES TAX COURT


DENNIS E. KALINOSKI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1090-05S.                    Filed March 15, 2010.


Dennis E. Kalinoski, pro se.

<u>Deborah K. Mackay</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code (Code) in

effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a Federal income tax deficiency of $18,412 for 2002 and additions to tax under sections 6651(a)(1) (failure to file), 6651(a)(2) (failure to pay the amount due), and 6654(a) (failure to pay estimated tax) of $3,089.25, $1,098.40, and $441.40, respectively. The parties entered into a stipulation of settled issues, which resulted in a reduced deficiency of $7,961, interest on the deficiency of $3,579.08, and a section 6654(a) addition to tax of $122. Petitioner paid the total of these three amounts, $11,662.08, by a check dated November 5, 2008.

In respondent's pretrial memorandum, in his opening statement at trial, and in the stipulation of settled issues, respondent agreed that the sole issue for decision is the applicability of the addition to tax for failure to file pursuant to section 6651(a)(1) in a revised amount of $1,990.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Illinois when he filed his petition.

Petitioner served honorably during his career as a police officer for a village in Illinois and then for the State of

Illinois, retiring as a sergeant in 1992 at age 50 with a pension.[1]  For 10 years of his career he served as a narcotics officer.  Before retiring from the police force petitioner started an unincorporated business as a gunsmith and a federally licensed firearms dealer, doing business as Dekalin, Ltd.  He sold firearms and ammunition primarily through gun shows and stored and refurbished firearms in his home.

Life started going awry for petitioner in 2000.  Petitioner's wife moved out in the summer of 2000 with their 13-year-old daughter, though petitioner remains married and financially supports his daughter.  In years before 2000 petitioner filed his Federal income tax returns timely.  Beginning with tax year 2000 he did not file timely or did not file at all.

On June 28, 2001, petitioner was arrested for not conducting mandated buyer identification procedures.  Later, State law enforcement agents searched petitioner's home, charging him with knowingly possessing stolen firearms.  In May 2002 a State court judge dismissed the charge for lack of sufficient evidence.  Petitioner did not renew his Federal

---

[1] The Court takes judicial notice of certain facts from public records related to petitioner's criminal proceeding in the Northern District of Illinois. United States v. Kalinoski, No. 1:03-CR-00460 (N.D. Ill. judgment entered Jan. 28, 2005).

firearms dealer's license that expired in June 2002. Sometime in 2002 petitioner became addicted to crack cocaine.

In early March 2003, in anticipation of preparing his 2002 Federal income tax return that was due by April 15, 2003, petitioner started gathering his records and purchased tax preparation software. About this time, petitioner began feeling intense pain in his back, which kept him bedridden upstairs for 2 weeks. He went to a physician, who diagnosed a hernia and referred petitioner to a back surgeon. Petitioner returned home to bed anticipating the surgery but felt that he should not leave the house again because he had women living with him who had opened the home to their friends. Some of these friends would take drugs and/or steal petitioner's property while he remained immobile upstairs. Petitioner felt he could not call the police because of the illegal drugs in his home.

Relying on an informant, on May 3, 2003, law enforcement agents executed a search warrant at petitioner's home, seizing firearms, ammunition, petitioner's records, and other personal property. They arrested petitioner, found a crack pipe on his person, and charged petitioner with three firearms-related felonies and requested the forfeiture of petitioner's seized property. Petitioner remained in custody during the pendency of his trial.

After the arrest, petitioner's family went into petitioner's home to clean it up.  They gathered petitioner's papers that were strewn throughout the house.  They did not pay close attention to the content of the papers and simply boxed the documents in no particular order.

On May 6, 2003, the Federal District Court appointed a Federal public defender as petitioner's counsel.  Petitioner quickly replaced him with a private criminal defense attorney.  Petitioner's new attorney made a request in June 2003 for petitioner's pretrial release, which the Federal District Court denied.

On January 23, 2004, petitioner pled guilty to one of the three felony charges:  "knowingly possessing firearms and ammunition that had traveled in interstate commerce while being an unlawful user of and addicted to a controlled substance, namely crack cocaine."  Petitioner agreed that he was making the plea voluntarily and that he understood "the nature and the elements of the crimes with which he has been charged."

Petitioner's back pain worsened, resulting in emergency corrective surgery on April 8, 2004, to repair an "incarcerated left inguinal hernia".  On June 30, 2004, petitioner replaced his criminal defense attorney.

Because the Internal Revenue Service had no record of petitioner filing a Federal income tax return for 2002,

respondent prepared a substitute for return using information from third-party payers and issued a notice of deficiency dated October 11, 2004.

On October 25, 2004, petitioner's new attorney asked the Federal District Court for return of three of the seized firearms that belonged to other people. The attorney amended the request slightly 3 days later. These two requests did not mention or request return of petitioner's records.

On December 21, 2004, petitioner posted a $250,000 bond for his temporary release while awaiting sentencing. While free on bond petitioner timely petitioned this Court, contesting respondent's proposed income tax deficiency and additions to tax for 2002 on the ground that the "deficiency assessment overstates taxable income and tax due by reason of failure to include all allowable deductions."

On January 25, 2005, petitioner's attorney filed a "Second Amended Motion for Return of Property", requesting for the first time the release of "documents, both personal and business".

Before acting on petitioner's requests, the Federal District Court on January 28, 2005, sentenced petitioner to imprisonment for 64 months, granting him credit for time served. Petitioner remained free on bond pending his surrender to the Bureau of Prisons scheduled for March 2, 2005. However, because of an alcohol and/or drug relapse, the Federal District Court

revoked petitioner's bond and law enforcement authorities rearrested petitioner on February 4, 2005.

On August 23, 2006, petitioner signed a broad power of attorney giving his brother,[2] Robert R. Verchota, who is an attorney, authority to act for petitioner as "attorney and agent in fact as to all civil matters" and specifically authorizing delivery of "all of my financial records" to Mr. Verchota. During petitioner's incarceration, petitioner's wife periodically collected mail from petitioner's home, which she forwarded to Mr. Verchota for review with petitioner.

Mr. Verchota finally received a box containing petitioner's records from the police in early May 2007. The records were in disarray, and some were missing. Petitioner arranged for delivery of the records to Richard F. Mejia, a "Tax Specialist & Accountant", for the purpose of preparing petitioner's 2002 Federal income tax return. Mr. Mejia, by letter dated July 5, 2007, informed petitioner that the paperwork was insufficient to properly prepare a return.

On September 17, 2007, Federal authorities transferred petitioner to a halfway house, where he lived until his full release on February 8, 2008.

---

[2] The record repeatedly refers to Mr. Verchota as petitioner's brother; however, because of the different surnames, we are not sure whether he is petitioner's brother, stepbrother, or brother-in-law.

Later in February 2008, petitioner picked up his records from Mr. Mejia and contacted respondent to discuss his tax case. Before long the parties were able to agree to a reduction in the amount of the income tax deficiency. Petitioner could not convince respondent to concede the section 6651(a)(1) addition to tax for failure to file a return, which had been mathematically reduced to $1,990 because of the decreased deficiency. Petitioner was satisfied with the other adjustments and eager to start his life anew; accordingly, on November 7, 2008, he paid respondent the $11,662 previously mentioned.

## Discussion

### I. Burden of Proof

The Commissioner bears the burden of production with respect to penalties and additions to tax. Sec. 7491(c); Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To satisfy this burden, the Commissioner must present "sufficient evidence indicating that it is appropriate to impose the relevant penalty" or addition to tax. Higbee v. Commissioner, supra at 446. However, once the Commissioner meets the burden of production, the taxpayer has the burden of proving that the Commissioner's determination is incorrect. Id. In situations where the Code provides an exception to the penalty or addition to tax, the Commissioner "need not introduce evidence regarding reasonable cause * * * or similar provisions.

* * * the taxpayer bears the burden of proof with regard to those issues." Id.

A taxpayer is liable for an addition to tax if the taxpayer fails to file a timely tax return. Sec. 6651(a). If the duration of the failure to file is 1 month or less, then the addition to tax is equal to 5 percent of the net amount of tax due that the taxpayer should have shown on the return. Sec. 6651(a)(1), (b). The taxpayer must pay an additional 5 percent for each month or fraction of a month in which the taxpayer continues to fail to file, reaching the maximum addition in 5 months at 25 percent of the tax due. Sec. 6651(a)(1).

A taxpayer may nevertheless avoid the addition to tax for failure to file a return if the taxpayer establishes that the failure was "due to reasonable cause and not due to willful neglect". Id. The Code does not define reasonable cause; however, the regulations explain reasonable cause as the exercise of "ordinary business care and prudence". Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; see also United States v. Boyle, 469 U.S. 241, 245-246 (1985) (defining willful neglect as a "conscious, intentional failure or reckless indifference"). Whether reasonable cause exists to avoid imposition of the addition to tax involves a question of fact. United States v. Boyle, supra at 249 n.8.

Respondent has satisfied his burden of production under section 7491(c) by establishing, as petitioner acknowledges,

that petitioner was required to file a Federal income tax return for 2002 and that petitioner did not file a return for 2002. Therefore, petitioner bears the burden of proving that his failure to file a return was due to reasonable cause and not willful neglect.

II.  Reasonable Cause

Petitioner accepts that he was "remiss" in not filing his return solely from the April 15, 2003, due date until the date of his arrest on May 3, 2003.  Beyond that date petitioner claims that he had reasonable cause for not filing "because of government misconduct" that continued for more than 4 years, preventing his access to financial records despite "petitioner's reasonable efforts to gather pertinent records and make a filing of said 2002 Federal tax return".  For the reasons stated below, petitioner's contention is not valid.

The caselaw is well settled that lack of access to records does not constitute reasonable cause for failing to timely file a tax return.  Estate of Vriniotis v. Commissioner, 79 T.C. 298, 311 (1982) (taxpayers who do not have access to their records must nevertheless file their tax returns timely using the most accurate estimates available).  If necessary, the taxpayer can file an amended return when the records or more accurate information become available.  Id.

Specifically, lack of access to records due to incarceration does not give rise to reasonable cause.  Llorente

v. Commissioner, 74 T.C. 260, 268-269 (1980) (the mere fact of a taxpayer's incarceration at the time the return was due is not reasonable cause within the meaning of section 6651(a)(1) for failure to timely file a return), affd. in part, revd. in part on other grounds and remanded 649 F.2d 152 (2d Cir. 1981); Labato v. Commissioner, T.C. Memo. 2001-243.

The reason for these holdings arises from concerns that the Supreme Court of the United States expressed in United States v. Boyle, supra at 249:

> The Government has millions of taxpayers to monitor, and our system of self-assessment in the initial calculation of a tax simply cannot work on any basis other than one of strict filing standards. Any less rigid standard would risk encouraging a lax attitude toward filing dates. Prompt payment of taxes is imperative to the Government, which should not have to assume the burden of unnecessary ad hoc determinations. [Fn. refs. omitted.]

Petitioner was in an even more advantageous position than the unsuccessful incarcerated taxpayers in Llorente v. Commissioner, supra, and Labato v. Commissioner, supra, because petitioner was not incarcerated at the time his tax return became due and he had access to his records. Therefore, he could have filed a timely return or requested an extension.

Petitioner contends that both he and his attorneys made "reasonable efforts" to secure his records during his incarceration. Petitioner filed two written requests in October 2004 with the Federal District Court asking for release of

certain property without mentioning the release of his records. It was not until January 25, 2005, almost 2 years after the due date of the return that petitioner first asked the Federal District Court in writing for a return of his records.

The Court has held that "the lack of precise data with respect to a relatively insignificant item which the taxpayer should be able to estimate with a reasonable degree of accuracy is not reasonable cause for a substantial delay in filing." Elec. & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1342-1343 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974).

Petitioner convinced respondent to make three adjustments to the notice of deficiency: allowing itemized deductions of $10,880 for home mortgage interest and $2,814 in real estate taxes, and allowing $6,000 in expenses on Schedule C, Profit or Loss From Business, related to petitioner's firearms and gunsmith business. A brief telephone call or letter from petitioner to the mortgage holder and town tax collector would have garnered the precise amount of the itemized deductions for mortgage interest and property taxes that petitioner paid in 2002. As a result, petitioner's argument boils down to the missing records for $6,000 in business expenses as the sole possible reasonable cause for his nonfiling.

The round number of $6,000 agreed to by the parties in 2008 suggests that in the end this figure was itself an estimate. Petitioner had been in the firearms and gunsmith business for more than a decade before 2002, giving him a long history by which to estimate his expenses. We see no reason petitioner could not have estimated his 2002 business expenses 5 years earlier when his tax return was due.

Moreover, petitioner remained in contact with his wife and brother during his incarceration. Petitioner's family cleaned his house after his arrest, they pledged their real estate for his bond, his wife collected his mail, and his brother held his power of attorney and served as his civil attorney in fact. Even if petitioner had difficulty communicating with respondent because of petitioner's incarceration, he could have asked his wife, his brother, or any of his attorneys to alert respondent about his predicament by trying to arrange a belated extension or other solution. See, e.g., Labato v. Commissioner, supra (noting that the taxpayer's wife who was not incarcerated could have filed the return on time).

Finally, we note that while petitioner has implied that his medical conditions prevented him from filing, neither his hernia nor his crack cocaine addiction constitutes reasonable cause. Courts have long accepted that continual physical and mental incapacity are sufficient reasons for late filing; however, the

standard is an exacting one.  Meyer v. Commissioner, T.C. Memo. 2003-12 (finding reasonable cause where the taxpayer contracted HIV, leading to AIDS, requiring strong antiviral medication, resulting in the taxpayer's nervous breakdown).  But see Williams v. Commissioner, 16 T.C. 893, 906 (1951) (the taxpayer suffered several strokes in the years before, during, and after his tax returns were due, leading to his death; however, the Court held that his executors did not establish that the taxpayer's incapacitation lasted longer than certain intervals recurring with each stroke).

The record contains no suggestion that petitioner was continuously incapacitated before or after his arrest on May 3, 2003.  Indeed, the facts support the opposite conclusion. Petitioner's emergency hernia surgery did not occur until April 8, 2004, almost 1 year after the due date of the return.  In the interim, petitioner actively participated in his own criminal case:  Hiring counsel, agreeing to a plea rather than facing a trial, and swearing under oath that he fully understood the nature and the elements of the charges against him.  Thus, petitioner's impediments simply did not rise to the level of preventing petitioner from filing a return.  See Kantor v. Commissioner, T.C. Memo. 2008-297 (sympathizing with a taxpayer's drug problems but finding that the time the taxpayer

spent undergoing drug rehabilitation did not adequately explain the 21-month delay in filing his return).

In conclusion, reviewing the entire record before us, we hold that petitioner's nonfiling was not due to reasonable cause but was due to willful neglect.  We sustain respondent's determination with regard to the section 6651(a)(1) addition to tax of $1,990 for petitioner's failure to file a 2002 Federal income tax return.

To reflect the foregoing,

Decision will be entered for respondent as to the deficiency and the additions to tax under sections 6651(a)(1) and 6654(a) in the reduced amounts stipulated by the parties and for petitioner as to the addition to tax under section 6651(a)(2).