T.C. Memo. 2003-12

UNITED STATES TAX COURT

RICHARD J. MEYER III, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5469-01.              Filed January 13, 2003.

Richard J. Meyer III, pro se.

<u>Shawna A. Early</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined the following deficiencies in and additions to petitioner's Federal income taxes:[1]

_____

    [1]  All figures are rounded to the nearest dollar.

| | | Additions to Tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 1994 | $5,005 | $684 | -- | $128 |
| 1995 | 7,923 | 1,036 | -- | 203 |
| 1996 | 11,174 | 1,408 | $1,251 | 304 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[2] the issues for decision are: (1) Whether petitioner Richard J. Meyer III (Mr. Meyer) is entitled to alimony deductions in amounts greater than those conceded by respondent for 1994, 1995, and 1996; (2) whether Mr. Meyer is entitled to dependency exemptions for 1994, 1995, and 1996 for his only child; (3) whether Mr. Meyer is entitled to a child care credit for 1994, 1995, and 1996; (4) whether Mr. Meyer is liable for additional tax pursuant to section 72(t) for 1994, 1995, and 1996; (5) whether Mr. Meyer is liable for an addition to tax pursuant to section 6651(a)(1) for 1994, 1995, and 1996; (6) whether Mr. Meyer is liable for an addition to tax pursuant to

---

[2] Petitioner concedes that (1) he received wage income as determined by respondent; (2) he received taxable pension distributions of $1,333, $1,716, and $3,379 in 1994, 1995, and 1996, respectively; and (3) his filing status for 1994 was married filing separately. Respondent concedes that (1) petitioner's filing status for 1995 and 1996 was single; (2) petitioner did not receive any cancellation of indebtedness income in 1996; and (3) petitioner is entitled to alimony deductions of $2,000 for 1995 and $3,000 for 1996.

section 6651(a)(2) for 1996; and (7) whether Mr. Meyer is liable for an addition to tax pursuant to section 6654(a) for 1994, 1995, and 1996.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed the petition, Mr. Meyer resided in New York, New York. As of the time of trial, Mr. Meyer was 37 years old.

In 1987, Mr. Meyer married Patricia Meyer (Ms. Meyer) in San Francisco, California. In 1989, Mr. Meyer and Ms. Meyer moved to Hawaii. In July 1990, Ms. Meyer gave birth to the couple's only child Richard J. Meyer IV (Richard).

Between February and May 1993, Mr. Meyer, Ms. Meyer, and Richard moved to Seattle, Washington. In May 1993, Mr. Meyer and Ms. Meyer separated. Mr. Meyer and Ms. Meyer did not enter into a formal separation agreement.

After separating, Ms. Meyer and Richard moved back to Hawaii and lived in Ms. Meyer's parents' condominium. During the years in issue, Richard resided in Hawaii with Ms. Meyer.

After separating, Ms. Meyer did not work. During the years in issue, Ms. Meyer was unemployed. Ms. Meyer did not pay rent, utilities, or any other expenses associated with living in her parents' condominium.

After separating in 1993 and until December 1993, Mr. Meyer paid Ms. Meyer's bills (including food, car expenses, insurance, etc.) and Richard's day care expenses monthly.

Around December 1993, Ms. Meyer told Mr. Meyer that she wanted Mr. Meyer to send her cash rather than have him pay her bills. From December 1993 until May 1995, Mr. Meyer sent Ms. Meyer a check for $870 every month. Additionally, Mr. Meyer paid Ms. Meyer's car insurance and Richard's medical bills.

The payments Mr. Meyer made from 1993 through May 1995, however, were not made pursuant to a divorce decree or court order.

In March 1995, Ms. Meyer filed for divorce. In May 1995, a Hawaii State court ordered Mr. Meyer to pay $250 per month alimony and $790 per month child support to Ms. Meyer. Starting in May 1995, money was taken directly out of Mr. Meyer's paycheck for the amounts the Hawaii State court ordered Mr. Meyer to pay Ms. Meyer.

In October 1995, the Hawaii State court issued a final divorce decree. In the divorce decree, Ms. Meyer was granted custody of Richard. The divorce decree ordered Mr. Meyer to pay $250 per month alimony for 30 months and $580 per month child support to Ms. Meyer.

The divorce decree granted Mr. Meyer the dependency exemption for his son for as long as Mr. Meyer paid alimony and

child support.  Ms. Meyer, however, did not execute a written declaration releasing to Mr. Meyer the dependency exemption for Richard for 1994, 1995, and 1996.

During the years in issue, Mr. Meyer suffered from severe health problems--initially he was diagnosed with HIV; later he was diagnosed with AIDS.  Mr. Meyer's infection was very active and required strong antiviral medication to combat the virus. During the years in issue, Mr. Meyer also suffered a nervous breakdown and had to take a leave of absence from his job.

Mr. Meyer did not timely file Federal income tax returns for 1994, 1995, and 1996.

## OPINION

### Alimony

In addition to the amounts conceded by respondent, Mr. Meyer claims he is entitled to deduct his $870 per month payments to Ms. Meyer from January 1994 through April 1995 as alimony-- $10,440 for 1994 and $3,480 in 1995.

Section 215(a) permits a deduction for the payment of alimony or separate maintenance payments during a taxable year. Section 215(b) defines the term alimony or separate maintenance payment as alimony or separate maintenance which is includable in the gross income of the recipient under section 71.  Section 71(b)(1) defines alimony or separate maintenance as any cash payment meeting the four criteria provided in subparagraphs (A)

through (D) of that section.

Respondent contends that Mr. Meyer is not entitled to any alimony deduction with respect to payments he made prior to May 1995 because they were not made pursuant to a divorce decree or separation instrument as required by section 71(b)(1)(A). Section 71(b)(1)(A) defines alimony or separate maintenance payments as any payment made in cash if such payment is received by a spouse under a divorce or separation instrument. "Divorce or separation instrument" is defined in section 71(b)(2) as a decree or written instrument meeting any of the requirements in subparagraphs (A), (B), or (C). Payments not received under a divorce or separation instrument are not deductible under section 215. Healey v. Commissioner, 54 T.C. 1702 (1970), affd. without published opinion 71-2 USTC par. 9536, 28 AFTR 2d 71-5217 (4th Cir. 1971); Jachym v. Commissioner, T.C. Memo. 1984-181; see also White v. Commissioner, T.C. Memo. 1984-65.

The payments Mr. Meyer made before May 1995, the date of the Hawaii State court order, were voluntary in nature as they were not mandated by a qualifying divorce or separation instrument at the time they were made. Accordingly, the payments Mr. Meyer made before May 1995 are not deductible.

Dependency Exemptions

Section 151(a) and (c) allows a deduction for a "dependent" as defined in section 152. Sons or daughters of the taxpayer,

more than half of whose support during the calendar year is provided for by the taxpayer, are "dependents".  Sec. 152(a).

Section 152(e)(1), however, further provides that if a child receives more than half of his support during the calendar year from parents who are divorced or legally separated, or who live apart at all times during the last 6 months of the calendar year, and if the child is in the custody of one or both of his parents for more than one-half of the calendar year, then the child is treated as receiving more than half of his support during the year from the parent having custody for a greater portion of the calendar year (custodial parent).  Section 152(e)(2) provides an exception to this rule where the custodial parent releases his claim to the exemption for the year.  The custodial parent must sign a written declaration that the custodial parent will not claim such child as a dependent for such taxable year, and the noncustodial parent[3] must attach such written declaration to the noncustodial parent's return for that taxable year.  Sec. 152(e)(2).

Mr. Meyer and Ms. Meyer lived apart during all of 1994, 1995, and 1996; they were divorced in 1995.  During the years in issue, Richard resided in Hawaii with Ms. Meyer, and in the divorce decree Ms. Meyer was granted custody of Richard.

---

[3] The noncustodial parent is the parent who is not the custodial parent.  Sec. 152(e)(2).

Accordingly, Ms. Meyer was the custodial parent.

Ms. Meyer never executed a written declaration releasing to Mr. Meyer the dependency exemption for Richard for 1994, 1995, or 1996, and Mr. Meyer did not attach to a return for 1994, 1995, or 1996 anything purporting to be a written declaration signed by Ms. Meyer releasing the dependency exemption for Richard to him. Therefore, we conclude that Mr. Meyer is not entitled to a dependency exemption for 1994, 1995, or 1996 for Richard. Sec. 152(e); see Miller v. Commissioner, 114 T.C. 184 (2000) (section 152(e)(2) requires the custodial parent to sign a written declaration releasing the dependency exemption for his or her child to the noncustodial parent).

Child Care Credit

In the case of an individual who maintains a household which includes as a member one or more qualifying individuals, there shall be allowed as a credit against tax an amount equal to the applicable percentage of employment-related expenses paid by such individual during the taxable year. Sec. 21(a)(1). A "qualifying individual" includes a dependent of the taxpayer under the age of 13 and with respect to whom the taxpayer is entitled to a deduction under section 151(c).[4] Sec. 21(b)(1)(A).

Mr. Meyer is not entitled to a deduction for Richard under

---

[4] Additional definitions of "qualifying individual" are not applicable herein. Sec. 21(b)(1)(B) and (C).

section 151(c) for 1994, 1995, or 1996.  Accordingly, Richard is
not a qualifying individual.  Therefore, we conclude that Mr.
Meyer is not entitled a credit pursuant to section 21(a) for
1994, 1995, and 1996.

Additional Tax Pursuant to Section 72(t)

Section 72(t)(1) provides for a 10-percent additional tax on
the taxable amount of an early distribution from a qualified
retirement plan.  Mr. Meyer conceded that he received the taxable
pension distributions of $1,333, $1,716, and $3,379 for 1994,
1995, and 1996, respectively; however, Mr. Meyer contends that an
exception provided by section 72(t)(2) applies.

Section 72(t)(2) provides exceptions to the 10-percent
additional tax for certain types of distributions.  Section
72(t)(1) does not apply to distributions attributable to a
taxpayer's being disabled within the meaning of section 72(m)(7).
Sec. 72(t)(2)(A)(iii).  Section 72(m)(7) provides that an
individual is disabled if he is unable to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or to be of long-continued and indefinite
duration.  Primary consideration should be given to the nature
and severity of the impairment.  Sec. 1.72-17A(f)(1), Income Tax
Regs.  Whether or not the impairment constitutes a disability is
to be determined with reference to all the facts in the case.

Sec. 1.72-17A(f)(2), Income Tax Regs.

On the basis of the particular facts and circumstances present in this case, namely petitioner's severe health problems and mental condition which incapacitated him during the years in issue, we conclude that an exception provided in section 72(t)(2) is applicable to Mr. Meyer for the years in issue. Accordingly, we conclude that Mr. Meyer is not liable for the additional tax imposed by section 72(t)(1).

Additions to Tax

Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (determined with regard to any extension of time for filing), unless the taxpayer can establish that such failure is due to reasonable cause and not due to willful neglect. Section 6651(a)(2) provides for an addition to tax where payment of tax is not timely "unless it is shown that such failure is due to reasonable cause and not due to willful neglect".

On the basis of the particular facts and circumstances present in this case, namely petitioner's severe health problems and mental condition which incapacitated him during the years in issue, we conclude that Mr. Meyer's failure to file for the years in issue and failure to pay for 1996 were due to reasonable cause and not willful neglect. See Shaffer v. Commissioner, T.C. Memo. 1994-618. Accordingly, we conclude that Mr. Meyer is not liable

for additions to tax pursuant to section 6651(a)(1) and (2).

Section 6654 imposes an addition to tax for failure to pay estimated income tax. Section 6654(e), however, provides that the addition to tax pursuant to section 6654(a) shall not be imposed when: (1) By reason of casualty, disaster, or other unusual circumstances the imposition of such addition to tax would be against equity and good conscience, or (2) when the taxpayer became disabled in the taxable year for which estimated payments were required to be made (or in the taxable year preceding such year) and such underpayment was due to reasonable cause and not willful neglect. Sec. 6654(e)(3)(A) and (B).

On the basis of the particular facts and circumstances present in this case, namely petitioner's severe health problems and mental condition which incapacitated him during the years in issue, we conclude that an exception provided in section 6654(e) is applicable to Mr. Meyer for the years in issue. See Shaffer v. Commissioner, supra. Accordingly, we conclude that Mr. Meyer is not liable for the addition to tax pursuant to section 6654.

To reflect the foregoing,

Decision will be entered

under Rule 155.