Margaret V. STINE, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 10–445 T.

United States Court of Federal Claims.

Oct. 23, 2012.

Michael A. Schwartz, Philadelphia, PA, for plaintiff. Eli Segal, Philadelphia, PA, of counsel.

Paul G. Galindo, United States Department of Justice Tax Division, with whom were Kathryn Keneally, Assistant Attorney General, David I. Pincus, Chief, Court of Federal Claims Section, Mary M. Abate, Assistant Chief, Washington, DC, for defendant.

## OPINION

BUSH, Judge.

Before the court is defendant's motion for summary judgment brought under Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). The motion has been thoroughly briefed, and oral argument was neither requested by the parties nor deemed necessary by the court. The dispositive issue before the court is whether plaintiff's health excused her from timely filing a federal gift tax return and payment. For the reasons set forth below, the court grants defendant's motion because plaintiff has failed to identify a genuine issue of material fact as to a health-related incapacity.

## BACKGROUND [1]

Mrs. Stine seeks a refund of the $450,000 penalty and related $21,500 in interest assessed by the Internal Revenue Service (IRS) for failure to timely file a federal gift tax return and payment for tax year 2007. Compl. ¶ 1. Mrs. Stine's health problems beginning in the fall of 2007 included pneumonia, recurrent upper respiratory infections, knee pain, knee replacement surgery, a thyroid growth, heart palpitations, and cataract surgery. Id. ¶¶ 3–4. Plaintiff alleges that her health problems rendered her "unable to file a timely 2007 gift tax return for the gifts she had made to her daughters at the beginning of that year." Id. ¶ 5.

Mrs. Stine's gift tax return and payment were due on April 15, 2008. Pl.'s Opp. Ex. D at 1. On or about September 11, 2008, Mrs. Stine filed a gift tax return, Form 709, and payment for the gift taxes she owed for 2007, acknowledging that the form and payment were late. Compl. ¶¶ 12–13. Plaintiff requested the abatement of penalties due to "her combination of acute but temporary health issues." Id. ¶ 12. The IRS assessed Mrs. Stine a penalty in the amount of $450,000, denied her request for an abate-

---

1. The facts recounted here are taken from the parties' pleadings and briefs, and appear to be undisputed for the purpose of deciding defendant's motion. See Def.'s Mot. at 3 n. 2. The court makes no findings of fact in this opinion.

ment, and also assessed interest on the penalty in the amount of $21,500. *Id.* ¶¶ 14–17.

Mrs. Stine appealed the penalty, but her appeal was denied. Compl. ¶¶ 18–19. Plaintiff then filed a request for a refund for $471,500 in late 2009, but received no response from the IRS. *Id.* ¶¶ 20–21. Mrs. Stine filed her refund suit in this court on July 9, 2010. Discovery was completed by December 5, 2011. The court reserves further discussion of relevant facts for the analysis section of this opinion.

## DISCUSSION

### I. Standards of Review

#### A. Summary Judgment

"[S]ummary judgment is a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed. Cir.1987) (internal quotations and citations omitted). "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting former version of Fed. R.Civ.P. 56(c)). A genuine issue of material fact is one that could change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment will prevail "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). "The moving party ... need not produce evidence showing the absence of a genuine issue of material fact but rather may discharge its burden by showing the court that there is an absence of evidence to support the nonmoving party's case." *Dairyland Power Coop. v. United States,* 16 F.3d 1197, 1202 (Fed.Cir.1994) (citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548).

A summary judgment "motion may, and should, be granted so long as whatever is before the ... court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56[ ], is satisfied." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

A summary judgment motion is properly granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial. *Id.* at 324, 106 S.Ct. 2548. The burden on the nonmovant in this scenario is to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former version of Fed.R.Civ.P. 56(e)). The Supreme Court has instructed that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. A nonmovant will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505 (citation omitted). "A nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." *Dairyland,* 16 F.3d at 1202 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548).

In considering a motion for summary judgment, the court does not "weigh[ ]" each side's evidence. *Contessa Food Prods., Inc. v. Conagra, Inc.,* 282 F.3d 1370, 1376 (Fed. Cir.2002) (citing *Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1565 (Fed.Cir. 1988)), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665, 671, 678 (Fed.Cir.2008). Rather, "[o]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *see also Godley v.*

*United States,* 5 F.3d 1473, 1474–75 (Fed.Cir. 1993) ("In reaching summary judgment, the trial court must construe facts and resolve inferences in the light most favorable to the non-movant.") (citations omitted). That is, "all significant doubt over factual issues must be resolved in favor of the party opposing summary judgment." *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987) (citations omitted).

## B. Late Filing Penalties

The statute that governs this case is 26 U.S.C. § 6651(a) (2006), which states in relevant part that failure to timely file a tax return and taxes owed will be subject to penalty "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." *Id.* The leading case interpreting the terms "reasonable cause" and "willful neglect" in § 6651(a) is *United States v. Boyle,* 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). Both parties rely heavily on *Boyle.*

■ The purpose of the penalty provision is "to ensure timely filing of tax returns to the end that tax liability will be ascertained and paid promptly." *Boyle,* 469 U.S. at 245, 105 S.Ct. 687. The United States Supreme Court noted that to show reasonable cause for a late filing, a taxpayer must have " 'exercised ordinary business care and prudence,' " quoting 26 C.F.R. § 301.6651–1(c)(1). *Id.* at 243, 105 S.Ct. 687; *see also* 26 C.F.R. § 301.6651–1(c)(1) (2012) ("If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause."). The Court observed that the IRS has identified several categories of reasonable cause for a delayed filing, including "the death or serious illness of the taxpayer or a member of his immediate family." *Boyle,* 469 U.S. at 243 n. 1, 105 S.Ct. 687 (citation omitted). The Court also quoted a more general statement in an IRS manual, which explained that " '[a] cause for delinquency which appears to a person of ordinary prudence and intelligence as a reasonable cause for delay in filing a return and which clearly negatives willful

neglect will be accepted as reasonable.' " *Id.* (citation omitted).

■ Turning to the legal standard for reasonable cause and willful neglect in § 6651(a) cases, the Court in *Boyle* held that:

> To escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from "willful neglect," and (2) that the failure was "due to reasonable cause." 26 U.S.C. § 6651(a)(1).

469 U.S. at 245, 105 S.Ct. 687. Although only reasonable cause was at issue in *Boyle,* the Court defined both terms:

> [T]he term "willful neglect" may be read as meaning a conscious, intentional failure or reckless indifference.... [To show] "reasonable cause" ... the taxpayer [must] demonstrate that he exercised "ordinary business care and prudence" but nevertheless was "unable to file the return within the prescribed time."

*Id.* at 245–46, 105 S.Ct. 687 (citations and footnote omitted). Thus, a tax penalty under § 6651(a) may be imposed for: (1) reckless indifference to the taxpayer's obligations under the tax laws; (2) failure to exercise ordinary business care and prudence; or (3) failure to show that the taxpayer was unable to file a timely return. *See id.* at 245–46 & n. 4, 105 S.Ct. 687 (noting the dual burden on a taxpayer to negate willful neglect and to show reasonable cause for a delayed tax filing, and the dual elements of reasonable cause in 26 C.F.R. § 301.6651–1(c)(1), *i.e.,* the exercise of ordinary business care and prudence along with a showing that the taxpayer was unable to timely file a tax return and payment); *Valen Mfg. Co. v. United States,* 90 F.3d 1190, 1193 (6th Cir.1996) (noting that a taxpayer must show that it exercised ordinary business care and prudence and "that it has been rendered unable to meet its responsibilities *despite* the exercise of such care and prudence") (citing 26 C.F.R. § 301.6651–1(c)(1)).

The Court in *Boyle* did not decide, however, how ill someone must be to escape a penalty imposed under § 6651(a), or whether a taxpayer's disability might eliminate the requirement in 26 C.F.R. § 301.6651–1(c)(1) for the exercise of ordinary business care

and prudence. *See* 469 U.S. at 249 n. 6, 105 S.Ct. 687 (explicitly declining to rule on the standard applicable in taxpayer disability cases); *see also id.* at 255, 105 S.Ct. 687 (stating that "we need not decide the issue of whether and under what circumstances a taxpayer who presents evidence that he was *unable* to adhere to the required standard might be entitled to relief from the penalty") (Brennan, J., concurring). The United States Court of Appeals for the Federal Circuit also has not yet ruled on these issues. This court must therefore rely on persuasive authority on these two questions.

The parties do not appear to disagree on the standard to be applied in taxpayer disability cases. Both parties cite the same authority, Def.'s Mot. at 8–9; Pl.'s Opp. at 10, to describe how a serious illness might excuse a taxpayer from the requirement that he or she exercise ordinary business care and prudence:

> [A] court may find reasonable cause under § 6651(a)(1) ... if a taxpayer convincingly demonstrates that a disability beyond his control rendered him unable to exercise ordinary business care.

*In re Sanford,* 979 F.2d 1511, 1514 n. 8 (11th Cir.1992) (citing *Boyle,* 469 U.S. at 248 n. 6, 252–55, 105 S.Ct. 687). This appears to be a logical and persuasive interpretation of *Boyle* which the court adopts for the purposes of this opinion.

Another issue in § 6651(a) cases is whether the inquiry into reasonable cause and/or willful neglect is a matter of fact or law. *Boyle* held that courts should not consider the determination of reasonable cause, for example, to always require an intensive factual inquiry:

> A number of courts have indicated that "reasonable cause" is a question of fact, to be determined only from the particular situation presented in each particular case. This view is not entirely correct. Whether the elements that constitute "reasonable cause" are *present* in a given situation is a question of fact, but what elements *must*

be present to constitute "reasonable cause" is a question of law. When faced with a recurring situation, such as that presented by the instant case, the courts of appeals should not be reluctant to formulate a clear rule of law to deal with that situation.

469 U.S. at 249 n. 8, 105 S.Ct. 687 (citations omitted). Thus, this court must determine whether the dispute in this case is a factual dispute or a dispute as to the elements necessary to show reasonable cause.

## II. Analysis

### A. Serious Illness of the Taxpayer May Provide Reasonable Cause

There are a plethora of decisions which discuss the illness of a taxpayer, or the illness of a member of the taxpayer's family, and whether the illness constitutes reasonable cause under § 6651(a). None of these decisions is binding on this court. Plaintiff has cited at least fourteen cases where illness was found to have provided reasonable cause to excuse the delayed filing of taxes. Pl.'s Opp. at 10–12. Defendant argues that the cases cited by plaintiff are distinguishable, Def.'s Reply at 14–18, and relies, particularly, on a case where a taxpayer's terminal illness, with severe and disabling symptoms, was found to be insufficient to invalidate a penalty under § 6651(a), *see First Cnty. Nat'l Bank & Trust Co., of Woodbury, N.J. v. United States,* 291 F.Supp. 837, 841 (D.N.J. 1968) ("The plaintiff has not carried its required burden of proof in establishing that the failure of the decedent to file his 1964 federal gift tax return during his lifetime within the prescribed period was due to reasonable cause and not to wilful neglect.").

It is difficult to draw a bright line separating health problems which diminish a taxpayer's ability to timely file taxes and serious illnesses which provide reasonable cause under § 6651(a).[2] After reviewing the cases cited by the parties, and others, the court concludes, nonetheless, that certain patterns emerge. Lengthy hospitalizations

---

2. The court chooses to rely primarily on post-*Boyle* decisions, to ensure that the analysis in those cases reflects the binding precedent of *Boyle.* Only if a pre-*Boyle* opinion continues to be cited in recent decisions does the court consider such an opinion to have persuasive authority.

during tax season, *e.g., Harbour v. Comm'r*, 62 T.C.M. (CCH) 1083 (1991), paralysis, *e.g., United States v. Isaac*, No. 89–145, 1991 WL 138321, at *2 (E.D.Ky. June 3, 1991), or prolonged symptoms which fully disable a person, *e.g., Jones v. Comm'r*, 56 T.C.M. (CCH) 724 (1988), are considered to be indications of serious illness which may constitute reasonable cause under § 6651(a). Or, to quote an influential opinion from the United States Court of Appeals for the Seventh Circuit:

> We believe the type of illness or debilitation that might create reasonable cause is one that because of severity or timing makes it virtually impossible for the taxpayer to comply—things like emergency hospitalization or other incapacity occurring around tax time.

*In re Carlson*, 126 F.3d 915, 923 (7th Cir. 1997). Evidence that the taxpayer is able to conduct his or her business or financial affairs despite the illness shows that the illness is not severe enough to constitute reasonable cause under § 6651(a). *Id.; see also Marrin v. Comm'r*, 147 F.3d 147, 153 (2d Cir.1998) (stating that "employment and . . . securities and futures transactions during the relevant period undermines Marrin's claim that he was so incapacitated that he could not file the income tax returns").

### B. Mrs. Stine's Health Issues Did Not Provide Reasonable Cause

The court notes that no single health event described in Mrs. Stine's factual allegations approaches the level of serious illness contemplated by § 6651(a) and persuasive authority interpreting that statute. A variety of serious health problems have, despite their challenges, been rejected as not meeting the "reasonable cause" standard of § 6651(a) because these health problems did not show that the taxpayer was unable to timely file his or her tax return and payment. *See, e.g., Jordan v. Comm'r*, 90 T.C.M. (CCH) 506 (2005) (citing cases). Thus, Mrs. Stine's knee surgery or her upper respiratory problems, for example, are not conditions which in and of themselves provide reasonable cause under § 6651(a).

In this case, however, plaintiff does not allege that it was just one health event that rendered her unable to timely file her gift tax return and payment. Instead, plaintiff relies on a series of adverse health events; Mrs. Stine's reactions to medications; and the emotional impact of her health concerns to establish reasonable cause under § 6651(a). A detailed examination of Mrs. Stine's health issues in the relevant period is not required, however, to decide defendant's motion. The court limits its discussion to certain significant aspects of Mrs. Stine's health in 2007 and 2008.

### 1. Brief Hospital Stay

■ Most of Mrs. Stine's health problems appear to have been treated on an outpatient basis. Plaintiff has not alleged that a lengthy hospital stay rendered her unable to file her gift tax return. The only reference to an overnight stay in a hospital is to a stay in February 2008, when she had knee surgery. Although no medical records related to the hospital stay were submitted by plaintiff, it is clear that Mrs. Stine spent one night in the hospital following her knee surgery, and was still there the following day. *See* Pl.'s Opp. Ex. A ¶ 9. Thus, this case is unlike those cases where a hospital stay of several weeks provided reasonable cause for a delay in filing a tax return and payment. *Cf. Isaac*, 1991 WL 138321, at *2; *Harbour*, 62 T.C.M. (CCH) 1083. Mrs. Stine's brief hospitalization for knee surgery in February 2008 could not provide reasonable cause under § 6651(a).

### 2. Symptoms Not Sufficient to Render Plaintiff Unable to Timely File Gift Tax Return

■ Mrs. Stine suffered a variety of symptoms during the latter part of 2007 and through August of 2008. Some of these symptoms were related to upper respiratory infections and/or pneumonia, others symptoms included pre-surgery knee pain, post-surgery knee pain, medication reactions, heart palpitations, and blurred vision. The court agrees with one of Mrs. Stine's physicians that plaintiff had a "tough year physically." Pl.'s Notice Ex. A–1 at 1. The court has accorded all favorable inferences to

plaintiff's factual allegations as to the severity of Mrs. Stine's health issues. As explained below, however, Mrs. Stine's symptoms do not provide reasonable cause for plaintiff's failure to timely file her gift tax return and payment on April 15, 2008.

First, Mrs. Stine's various ailments responded to treatment and did not escalate to a disabling crisis. For example, her problems with upper respiratory infections did not prevent her from having knee surgery. *See* Pl.'s Opp. Ex. A ¶ 7. Thus, her case is unlike those cases where a taxpayer's acute health crisis provided reasonable cause under § 6651(a).[3] *Cf., e.g., Meyer v. Comm'r*, 85 T.C.M. (CCH) 760 (2003) (finding reasonable cause where the taxpayer progressed from living with HIV to AIDS, was taking strong anti-viral medications and had a nervous breakdown).

Second, Mrs. Stine has not alleged facts which show that she was continuously incapacitated during all of the weeks available for a taxpayer to have exercised ordinary business care and prudence so as to meet the gift tax filing deadline. *See* Pl.'s Opp. Exs. A–B (describing, in broad strokes, indeterminate episodes of illness beginning in late 2007 and continuing through part of 2008). During the periods of illness discussed in the documentary evidence presented by plaintiff, her lucidity was only occasionally impaired. *See id.* Having reviewed the medical records and affidavits submitted by plaintiff, the court cannot infer that Mrs. Stine's health in 2007–08 constituted a continuous state of disability that rendered her unable to timely file her gift tax return and payment.

■ One seminal case on taxpayer disability and § 6651(a) is *Williams v. Comm'r*, 16 T.C. 893 (1951); the analysis of reasonable cause in *Williams* is often cited by the United States Tax Court. *See, e.g., Heller v. Comm'r*, 99 T.C.M. (CCH) 1493 (2010). The principle of law that has been derived from *Williams* is that a taxpayer's serious illness must be of a duration that is commensurate with the failure to timely file a tax return. *See, e.g., Wright v. Comm'r*, 75 T.C.M. (CCH) 2536 (1998) (noting that "the duration of the incapacity must approximate that of the failure to file") (citations omitted). In other words, episodic or intermittent periods of disability are not sufficient to excuse a late tax filing—the disability must have rendered the taxpayer effectively unable to meet the obligation during the overall period of time relevant to the filing obligation. *See Williams*, 16 T.C. at 906 (discussing a series of strokes afflicting the taxpayer, and positing that "perhaps[ ] he was incapacitated only at certain intervals recurring with each stroke"). This principle has sometimes been described as a requirement that the disability be continuous. *See, e.g., Akins v. Comm'r*, 65 T.C.M. (CCH) 2937 (1993) ("In cases where physical illness is claimed as a defense to the penalty for failure to file a timely return, the taxpayer must establish that he was continuously incapacitated."), *aff'd*, 35 F.3d 577 (11th Cir.1994) (Table). The weight of authority reviewed by this court shows that intermittent incapacity is not enough to render a taxpayer unable to timely file a tax return and payment. *See, e.g., Gropper v. United States*, No. 04–CV–279, 2005 WL 3078234, at *1–*3 (E.D.Pa. Nov. 15, 2005) (noting that the taxpayer's symptoms of drowsiness and depression were present "[a]t times" and that the level of assistance she needed varied, and concluding that her

---

**3.** Plaintiff relies on *Brown v. United States*, 630 F.Supp. 57, 57–60 (M.D.Tenn.1985), for that court's analysis of whether an illness rises to the level of reasonable cause. Pl.'s Opp. at 10–11. To the extent that *Brown* could be read to suggest that taking high blood pressure medication and consulting several physicians is sufficient to provide reasonable cause under § 6651(a), this court disagrees. The court notes, too, that *Brown* is distinguishable from this case on its facts, because it involves not only an estate administrator's health but also an "emergency situation created by the unexpected illness of [the estate's] attorney shortly before the return was due." 630 F.Supp. at 60. The court also observes that the court in *Brown* relied on three factors, not just health, to find the estate administrator incapable of exercising ordinary business care and prudence in exigent circumstances: his age, his health and his inexperience as an estate administrator. *Id.* Finally, to the extent that the *Brown* decision lowered the standard for the state of disability required to show reasonable cause under § 6651(a), no court has followed *Brown* and found that medication usage and the care of several physicians are sufficient to excuse the late filing and payment of taxes.

health problems did not provide reasonable cause under § 6651(a)); *Thomas v. Comm'r*, 90 T.C.M. (CCH) 477 (2005) (finding that "bilateral tendinitis, carpal tunnel syndrome, and periods of depression" did not constitute reasonable cause under § 6651(a)); *Carter v. Comm'r*, 76 T.C.M. (CCH) 27 (1998) (examining the medical problems alleged by the taxpayer, including back pain, conjunctivitis, a medication reaction, and pneumonia, and concluding that "although the Court is satisfied that petitioner experienced medical problems during the years in question, petitioner failed to show that any such illnesses or injuries incapacitated her to the point that she could not, with reasonable effort, file on time her Federal income tax returns for the years at issue").

The periods of time during which Mrs. Stine is alleged to been incapacitated to the extent that she was unable to meet her obligation to timely file the gift tax return and payment include: (1) a period from late December 2007 to early 2008, when she was confused by medications prescribed for knee pain; (2) during and after her knee surgery, when her pain medications caused her to have hallucinations and to be less lucid. Pl.'s Opp. Ex. A ¶¶ 5–6, 9, 11, 14, 16. Mrs. Stine's claimed confusion during these periods appears to be largely evidenced by mistakes she is alleged to have made in taking her medications. *Id.* ¶¶ 6, 13, 15. Plaintiff also appears to allege that the emotional component of Mrs. Stine's health problems contributed to an incapacity sufficient to satisfy the reasonable cause requirement of § 6651(a).[4] *Id.* ¶¶ 12, 14. According all favorable inferences to plaintiff's allegations of fact, Mrs. Stine may have been incapacitated for short periods of time when her medications rendered her less lucid than usual. As to continuous disability, however, the affidavits and medical records relied upon by plaintiff are too vague and non-specific to permit an inference that Mrs. Stine was continuously incapacitated during the time when she should have filed her gift tax return and payment for tax year 2007.

The allegations of fact regarding Mrs. Stine's incapacity are remarkably general, and contain no beginning and end dates as to specific periods of incapacity.[5] For example, in "early March 2008," Mrs. Stine "appeared despondent," "appeared very upset," and was "seriously concerned about the possibility of

**4.** Mental and emotional problems are often treated differently than physical health problems in cases interpreting § 6651(a). *See, e.g., Wilkinson v. Comm'r*, 74 T.C.M. (CCH) 566 (1997) (stating that "a mental or emotional disorder does not excuse a failure to file timely returns unless it is shown that the disorder rendered the taxpayer incapable of exercising ordinary business care and prudence during the period in which the failure to file continued"); *Barber v. Comm'r*, 73 T.C.M. (CCH) 2706 (1997) (finding no reasonable cause where the taxpayer "was not hospitalized as a result of her [emotional] condition and presented no medical evidence documenting its seriousness"); *Akins*, 65 T.C.M. (CCH) 2937 (stating that "to establish a defense of emotional illness as reasonable cause for failure to file, the taxpayer must show that he was incapacitated to the extent that he was unable to exercise ordinary business care and prudence during the period"); *Bloch v. Comm'r*, 63 T.C.M. (CCH) 1701 (1992) (finding no reasonable cause where the taxpayer's allegations of mental problems "f[e]ll short of conclusive medical proof of a mental illness"); *Lilley v. Comm'r*, 58 T.C.M. (CCH) 623 (1989) (finding no reasonable cause where, despite the varying mental illness diagnoses of experts retained by the taxpayer, "we are skeptical that petitioner continuously suffered from debilitating mental illness during the years at issue"). Emotional states alone, unless these are supported by

evidence of psychiatric care, are not, as a general rule, reasonable cause for purposes of § 6651(a). *See, e.g., Wilkinson*, 74 T.C.M. (CCH) 566 (finding no reasonable cause due to mental illness in a case where the taxpayer did not "undergo psychiatric evaluation during the years in issue"); *Barber*, 73 T.C.M. (CCH) 2706 ("Although we are sympathetic to petitioner's plight, we conclude that the emotional trauma she suffered did not preclude her from conducting her affairs in a manner that would justify relief from the addition to tax provided by section 6651(a)."). Thus, Mrs. Stine's alleged emotional state, as described by plaintiff, does not rise to the level of a disabling condition which provides reasonable cause under § 6651(a).

**5.** It is primarily the affidavit of Mrs. Stine's daughter that presents allegations of confusion and lack of lucidity. Mrs. Stine's own affidavit merely recounts a series of physical health problems, and that she was "feeling better" by September 2008. Pl.'s Opp. Ex. B ¶ 11. Mrs. Stine's medical providers note one medication reaction that occurred before December 19, 2007 which "cleared rapidly overnight," Pl.'s Notice Ex. B–1 at 9; another instance of impaired lucidity on February 19, 2008, the day after her knee surgery, *id.* Ex. B–1 at 15; and some forgetfulness up until February 26, 2008, *id.* Ex. D–1 at 1.

having [a biopsy of a thyroid growth]." Pl.'s Opp. Ex. A ¶ 12. As to Mrs. Stine's alleged errors in taking medications, these, too, are described in a vague and non-specific manner. *See id.* ¶ 6 (describing an isolated pain medication error as occurring "[i]n approximately early 2008"); *id.* ¶ 13 (describing Mrs. Stine's daughter's fear that "around the same time of the thyroid concerns, . . . [her] mother was confused about her medications and was not taking them as directed"); *id.* ¶ 15 (stating that "[i]n approximately May 2008, . . . [Mrs. Stine] apparently was not taking her heart medication as prescribed"). Finally, as to the effects of narcotics or other pain medications, Mrs. Stine is alleged to have had a reaction to pain medications which briefly impaired her lucidity in December 2007, Pl.'s Notice Ex. B–1 at 9; hallucinations on the day after her knee surgery on February 19, 2008, Pl.'s Opp. Ex. A ¶ 9; and to have been "not as lucid . . . and sedated" in the days after her discharge from the hospital in February 2008, *id.* ¶ 11. These brief and intermittent periods of alleged incapacity, taken together, do not excuse Mrs. Stine's failure to timely file and pay her 2007 gift taxes, because plaintiff has failed to provide sufficient evidence of continuous incapacity.

As stated previously, it is plaintiff's burden to demonstrate that reasonable cause excused the late filing of her 2007 federal gift tax return and payment. *See Boyle,* 469 U.S. at 245, 105 S.Ct. 687. According plaintiff's allegations of fact all favorable inferences, Mrs. Stine was only intermittently incapacitated by her health issues. Intermittent incapacity is not enough to show reasonable cause under § 6651(a). *E.g., Wright,* 75 T.C.M. (CCH) 2536. Because plaintiff has failed to allege specific facts sufficient to sustain her burden of proof, there is no genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Defendant's motion for summary judgment is therefore granted.

## C. Allegations of Incapacity Controverted by Undisputed Evidence that the Taxpayer Attended to Other Financial Affairs During the Same Period of Time

▌ Although the court has found that plaintiff has failed to proffer sufficient evidence of continuous incapacity to provide reasonable cause under § 6651(a), the court must also consider whether the financial transactions accomplished by Mrs. Stine show that she was not incapacitated during tax season. Courts routinely assess the seriousness of the illness suffered by a taxpayer in light of evidence that the taxpayer was nonetheless able to conduct business or financial affairs during the period of alleged incapacity. *See, e.g., Carlson,* 126 F.3d at 923. Indeed, evidence of business or financial transactions is often determinative in § 6651(a) cases. *See, e.g., Wright,* 75 T.C.M. (CCH) 2536 ("In light of petitioner's admitted capacity to attend to other matters, we conclude that he has failed to show reasonable cause for his failure to file for [tax year] 1989. Reasonable cause requires a showing of incapacity; 'selective inability' to file tax returns while attending to other responsibilities does not demonstrate reasonable cause.") (citations omitted). Thus, if Mrs. Stine were selectively incapacitated only as to her gift tax obligation, this fact would provide an independent ground to grant defendant's motion for summary judgment on the reasonable cause issue.

Plaintiff distinguishes many of the cases where evidence of contemporaneous business activity was fatal to a challenge to late-filing penalties, arguing that the financial transactions completed by Mrs. Stine in 2008 are not equivalent to employment or running a business. Pl.'s Opp. at 14–17. Although there is some superficial attractiveness to plaintiff's argument, it does not address the key issue that arises from plaintiff's factual allegations. Here, the evidence of incapacity proffered by Mrs. Stine must be tested against evidence of "[s]elective incapacity only with respect to [the] taxpayer's [gift] tax return[ ]." *Jordan,* 90 T.C.M. (CCH) 506 (citing *Wright,* 75 T.C.M. (CCH) 2536). Thus, the pertinent question is not whether Mrs. Stine's financial transactions during the relevant period were as weighty as full-time employment, it is whether there is a qualitative difference between the transactions timely accomplished by Mrs. Stine and the gift tax return filing

which she did not timely accomplish. If there is no qualitative difference, her argument that she suffered serious illness sufficient to show reasonable cause under § 6651(a) must be rejected.

### 1. Mrs. Stine's Financial Transactions

■ Defendant points to several financial transactions which Mrs. Stine completed during the period she is alleged to have been incapacitated by poor health. The first transaction is the real estate transfer of her property in Naples, Florida to a revocable trust, which involved her review of a deed, her visit to a notary to execute the deed, and the mailing of the completed documents to her tax attorneys. Def.'s App. Ex. 3 at 19. The second is a similar real estate transfer of her property in Annapolis, Maryland to a revocable trust, accomplished in the same fashion on the same day with the same notary. *Id.* The third transaction is the signing and sending by facsimile, "as soon as possible," of an IRS form authorizing her tax attorneys to electronically submit payment of the federal income taxes she owed for 2007. *Id.* at 20. This transaction involved both a telephone conversation with her tax attorney on April 9, 2008, and Mrs. Stine's review of the accuracy of her 2007 federal income tax return. *Id.* The fourth transaction consisted of the signing of Mrs. Stine's 2007 Connecticut income tax return, making out a check to enclose with the return, and mailing the return and payment by April 15, 2008. *Id.* The fifth transaction consisted of making out a check for her 2008 Connecticut estimated income taxes, and mailing that check along with a payment voucher by April 15, 2008. *Id.* Thus, during the height of tax season, Mrs. Stine was able to complete five financial transactions while she was allegedly incapacitated by serious illness.

Plaintiff asserts that "those tasks that Mrs. Stine did complete—signing her name on forms and checks, mailing items in provided envelopes, and traveling with her daughter to a notary, all upon explicit instructions from her law firm—are fundamentally different from the task that she failed to com-

plete—remembering and reporting [two gifts of two million dollars each, for her two daughters,] that happened over one year earlier." Pl.'s Opp. at 14. Plaintiff's argument is unavailing. The "remembering and reporting" required of Mrs. Stine was not fundamentally different from the financial tasks she completed in March and April of 2008—indeed, in some ways the actions required of Mrs. Stine to fulfill her gift tax obligations were far less onerous than the real estate transfers or tax filing tasks she did complete.

### 2. 2006 Gift, 2007 Gifts, and Gift Taxes for 2006 and 2007

In December of 2006, Mrs. Stine gave her son a cash gift of $4,000,000. Def.'s App. Ex. 8 at 50. Also in late 2006, Mrs. Stine discussed with her tax attorneys and her broker her intent to make large cash gifts in 2007 to her two daughters. *Id.* Ex. 4 at 25. In January of 2007, Mrs. Stine gave cash gifts ($2 million each) to her two daughters. *Id.* Ex. 7 at 38.

In April of 2007, Mrs. Stine paid $1,837,125 in federal gift taxes for 2006, largely because of the $4,000,000 gift to her son.[6] Def.'s App. Ex. 8 at 44. In April of 2008, Mrs. Stine owed approximately $1,800,000 in gift taxes for 2007, largely because of the $4,000,000 given to her two daughters. *Id.* Ex. 7 at 34. The tax attorneys' "file reflect[ed] no evidence that the broker or Mrs. Stine told persons at the firm [before September 2008] that the [$4,000,000 cash gifts to her daughters in January 2007] had, in fact, been made." *Id.* Ex. 4 at 25.

### 3. Selective Incapacity

Plaintiff argues that the five financial transactions that Mrs. Stine completed during tax season were "essentially ministerial." Pl.'s Opp. at 14. Whether or not that description is accurate, the undisputed facts show that Mrs. Stine, at the urging of her tax attorneys, completed five transactions that involved reviewing, dating, signing and mailing important financial documents. In the same March 13, 2008 letter instructing Mrs. Stine to review and execute two deeds, her tax attorney stated that

---

**6.** On at least one other occasion before the 2006 tax year, Mrs. Stine made a gift which caused her tax attorneys to prepare a gift tax return.

Def.'s App. Ex. 10 at 61 (discussing a 2003 gift and the preparation of the 2003 gift tax return in March of 2004).

we are now in the process of gathering information in order to prepare 2007 gift tax returns. Please let me know if you made any gifts in 2007 to individuals in excess of the $12,000 annual exclusion amount.

Pl.'s Opp. Ex. C. Thus, Mrs. Stine was afforded a specific reminder of her gift tax obligation, a statutory obligation that in the previous tax year had caused her to pay $1,837,125 in gift taxes.

If Mrs. Stine was in adequate health to respond to other reminders in the March 13, 2008 letter to complete important financial transactions, the court must conclude that she was in adequate health to respond to the gift tax obligation reminder as well. It is important to note that Mrs. Stine relied on tax attorneys and her broker to complete previous gift tax returns. *See* Def.'s App. Ex. 4 at 25, Ex. 10 at 61–62. It is therefore not a question of whether Mrs. Stine had the ability to focus, gather financial records, and fill out a complicated gift tax return—the question is whether Mrs. Stine had the capacity to obtain information relevant to the gift tax obligation question posed to her by her tax attorney.

Even if Mrs. Stine's memory of gifts made in January 2007 was less than vivid, she had ready access to persons who would have confirmed that she did, in fact, make substantial cash gifts in 2007. Her broker had that information. Her tax attorneys were aware that Mrs. Stine intended to make large cash gifts in 2007, and knew who to contact to obtain information as to the amount of those gifts. *See* Def.'s App. Ex. 10 at 62. Her daughter, the recipient of one of the $2,000,000 gifts made in January 2007, traveled with Mrs. Stine to the notary in March 2008 and witnessed the two deeds. Pl.'s Opp. at 14; Def.'s App. Ex. 5 at 30, Ex. 6 at 33, Ex. 7 at 38. All Mrs. Stine had to do to follow the instructions in the March 13, 2008 letter was to ask her daughter, her broker, or her tax attorney whether she made any large cash gifts in 2007. If Mrs. Stine was healthy enough to follow much more complex instructions to complete five important financial transactions during this time, she was healthy enough to follow her tax attorney's instructions regarding her gift tax obligations.

The undisputed facts cannot be read otherwise. There is no qualitative difference between the tasks completed by Mrs. Stine and the task she left unfinished until September 2008. In analogous cases discussing the illnesses of taxpayers, taxpayers who manage to file one tax return during the period of time they are alleged to suffer a serious illness have not shown reasonable cause under § 6651(a) to excuse the late filing of a different tax return due at the same time. *See, e.g., Kopty v. Comm'r,* 94 T.C.M. (CCH) 480 (2007) (holding that the filing of a 1998 tax return when the 1999 tax return was due showed that there was no reasonable cause under § 6651(a) to excuse the late filing of the 1999 tax return); *Estate of Landers v. Comm'r,* 92 T.C.M. (CCH) 369 (2006) (holding that the filing of a trust's tax return when an estate's tax return was due showed that the filer had no reasonable cause under § 6651(a) to excuse the late filing of the estate's tax return). Here, Mrs. Stine executed deeds and filed tax forms at the time she was alleged to have been incapacitated, and these undisputed facts show that she did not have reasonable cause to excuse the late filing of her 2007 gift tax return and payment.

The court notes, too, that plaintiff has not alleged that Mrs. Stine was incapacitated to the extent that she could not understand the March 13, 2008 letter. Indeed, at that moment in time, Mrs. Stine executed two deeds, acts which require a level of understanding and mental acuity that is no less than that required to understand her tax attorney's reminder regarding her gift tax obligations for 2007. Furthermore, the court observes that plaintiff has not alleged that any other financial obligation or transaction was neglected by Mrs. Stine during the relevant period of time. According all favorable inferences to the undisputed facts before the court, Mrs. Stine was only selectively incapacitated as to her gift tax return obligation, and did not have reasonable cause under § 6651(a) to excuse the late filing of her 2007 federal gift tax return. Defendant's motion

for summary judgment must therefore be granted.

### D. No Willful Neglect Proved under Summary Judgment Standard

The court does not conclude, however, that Mrs. Stine exhibited willful neglect of her federal gift tax obligation. Defendant argues that the facts of this case show Mrs. Stine's "'conscious, intentional failure' toward her 2007 federal gift tax obligations." Def.'s Mot. at 7 (quoting *Boyle,* 469 U.S. at 245, 105 S.Ct. 687). The court reads the record quite differently.

Plaintiff appears to have taken her tax obligations seriously. The court accords favorable inferences to Mrs. Stine's statement that she "did not intentionally fail to [timely] report" and pay gift taxes on the large amounts given to her daughters in 2007. Pl.'s Opp. Ex. B ¶¶ 14–15. A reasonable finder of fact could read the record before the court to show that Mrs. Stine's neglect of her gift tax obligations was inadvertent. For this reason, the court does not conclude that willful neglect is present in this case.

### E. Question of Fact or Question of Law

■■■ Plaintiff argues that Mrs. Stine's health situation presents a factual issue which should not be resolved on summary judgment. As to reasonable cause, plaintiff argues:

> [W]hether Mrs. Stine's medical issues prevented her from timely reporting and paying taxes on her January 2007 gifts to her daughters is a factual determination for this Court to make at trial—after hearing and evaluating all of Mrs. Stine's evidence.

Pl.'s Opp. at 17. The court acknowledges that all significant doubt over factual issues must be resolved in favor of Mrs. Stine, who opposes the government's motion for summary judgment. *See, e.g., Mingus Constructors,* 812 F.2d at 1390. The appropriateness of a tax penalty, however, is not always purely a question of fact. *See Boyle,* 469 U.S. at 249 n. 8, 105 S.Ct. 687; *see also In re Johnson Sys., Inc.,* 432 B.R. 306, 308, 311–18 (Bankr.N.D.Ala.2010) (ruling on cross-motions for summary judgment regarding reasonable cause and ■■■■l neglect).

[11] In *Conway v. United States,* 326 F.3d 1268, 1278–79 (Fed.Cir.2003), for example, a taxpayer argued that a penalty assessed under 26 U.S.C. § 6653 (1982) was improper because he was not negligent in following investment advice. The Federal Circuit affirmed the judgment of this court that the taxpayer had not met his burden to show that he was not negligent. *Id.* at 1279. The affirmance was of this court's ruling on summary judgment. *Id.* Thus, a taxpayer's assertions as to the invalidity of a tax penalty may, in this circuit, be ruled upon as a matter of law on summary judgment. The court notes, however, that in another Federal Circuit decision, this court's ruling on a reasonable cause defense to a tax penalty was affirmed after trial. *See Stobie Creek Invs. LLC v. United States,* 608 F.3d 1366, 1381–83 (Fed.Cir.2010). Thus, although defenses to tax penalties may be resolved on summary judgment in some cases, it is clear that in others trial will be required to resolve genuine issues of material fact.

Here, there is no genuine issue of material fact to prevent the entry of summary judgment for defendant. According all favorable inferences to plaintiff's factual allegations, Mrs. Stine's health problems did not render her continuously incapacitated during the period of time when she should have informed her tax attorneys of her 2007 gifts to her daughters. Thus, plaintiff has not offered sufficient evidence of incapacity to show reasonable cause under § 6651(a). Furthermore, the five financial transactions completed by Mrs. Stine, including the filing of tax payments as well as the review and the execution of deeds, show that Mrs. Stine was only selectively incapacitated as to her gift tax obligations. The undisputed facts of this case show that Mrs. Stine did not have reasonable cause, as the elements of reasonable cause have been established by persuasive authority, to excuse the late filing of her 2007 federal gift tax return and payment.

### CONCLUSION

Accordingly, it is hereby **ORDERED** that

(1) Defendant's Motion for Summary Judgment, filed February 15, 2012, is **GRANTED;**

(2) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** the complaint with prejudice; and

(3). Each party shall bear its own costs.